437 So.2d 692 (1983)
Roberto CRUZ, Appellant,
v.
STATE of Florida, Appellee.
No. AJ-349.
District Court of Appeal of Florida, First District.
April 14, 1983.
Rehearing and Rehearing Denied September 19, 1983.
*693 Neal L. Betancourt, Jacksonville, for appellant.
Jim Smith, Atty. Gen., Tallahassee, Kathryn L. Sands, Asst. Atty. Gen., Jacksonville, for appellee.
Rehearing and Rehearing En Banc Denied September 19, 1983.
ERVIN, Judge.
Cruz appeals his convictions for the offenses of conspiracy to commit robbery with a firearm and of robbery with a firearm. Because we find that the lower court unduly restricted appellant's right of cross-examination of the state's key witness, we reverse and remand this cause for a new trial.
Due to our disposition of this case, we will not address at length appellant's other points, i.e., that the lower court abused its discretion in refusing to reopen the evidence to allow the defendant to take the stand in his own behalf; that the lower court erred in denying defendant's motion for new trial on the ground that the court permitted a prosecution witness to testify that he had received certain money from the defendant as payment for his part in the robbery; that the lower court erred in denying the motions for judgment of acquittal on the ground that there was insufficient evidence to go to the jury on the question of whether defendant had participated either in the planning of the robbery or in the actual robbery itself; that the court erred in permitting a prosecution witness to testify on the ground that the state violated the rule of discovery by failing to notify defendant until just before the trial that the witness would appear on behalf of the state; that the court erred in giving to the jury an instruction on the law of principals, because the state had failed to request such an instruction at the time of the charging conference, and that the court erred in denying a motion for mistrial due to leading questions asked by the state of its own witnesses as to the date of the offense after a statement of particulars had been filed by the defense.
None of the above alleged errors constitutes reversible error. It also appears from our examination of the record that there was sufficient evidence to go before the jury. In our view many of the rulings alleged as errors involve a proper exercise of discretion which we find was not abused. Moreover, since this case must be retried for the reasons stated infra, certain of the assigned errors, particularly those relating to inadequate notice to the defense, will probably not recur on retrial.
The state's evidence against the defendants Cruz and Gilley, whose case was consolidated with that of Cruz for trial, consisted primarily of the testimony of Michael Smith, who was also charged with the same offenses for which Cruz and Gilley were then on trial. Smith, who on July 27, 1981 was an employee of McDonald's Fast-Food Restaurant located in Jacksonville, Florida, testified that early that same evening he, Cruz, Gilley, and one Roundtree had discussed a plan to rob McDonald's. The plan, which was successfully carried out, required Smith to leave the back door to the establishment unlatched, Gilley and Roundtree to enter and commit the robbery, and Cruz to drive the "getaway" car.
None of the robbers was identified as each wore stocking masks. There was additional circumstantial evidence from another employee, who had known Cruz when he had been employed at McDonald's, as having *694 seen Smith and Cruz together some time before the robbery in an automobile, a white Vega, which was similar to a car she had seen parked at McDonald's lot the evening of the robbery. Finally, a detective produced two wigs and some tennis shoes that he had removed from the home of co-defendant Roundtree. According to the victims, these items appeared to resemble those worn by the two robbers during the offense. Both Gilley and Cruz presented alibi testimony placing them at other places at the time the robbery was committed.
Following the robbery, Smith gave a statement admitting his complicity in the scheme. Later, Smith entered into extensive plea negotiations with the state, which were unsuccessful in that eventually Smith went to trial, but, after verdicts of guilt were returned against him, he agreed shortly before the trial of Cruz and Gilley to give state's evidence. On the same day that Smith's testimony was submitted to the jury, the state filed a motion in limine, seeking to restrict the defense from cross-examining Smith concerning his "alleged drug use and-mental problems ... on dates other than the date of the crime, Smith's arrest or Smith's deposition or courtroom testimony," as well as "any offers or negotiations made to [him] prior to or during his trial." In seeking exclusion of the latter material, the state's motion cited Section 90.410, Florida Statutes (1979).[1]
I. The Motion in Limine as it Relates to the Request to Restrict Cross-Examination of Smith Concerning His Drug Use.
In addressing this part of the state's motion, the court ruled it would grant it, with the exception of any questions relating to Smith's competency, loss of memory and "things flowing from the mental condition", but denied the defense the right to cross-examine Smith as to any involvement he may have had with drugs either before or during the offense. Defense counsel was allowed to and did ask the witness if he was nervous, if he considered that he was emotionally unstable and whether he felt that he had mental problems, to all of which Smith responded affirmatively.
It is well established that great latitude is allowed the defense in the cross-examination of a witness to determine his interest, his opportunities for observation, his disposition to speak truthfully, and his ability to speak accurately. Killingsworth v. State, 90 Fla. 200, 105 So. 834 (1925). Indeed, the Florida Evidence Code codifies existing case law by permitting a party to attack the credibility of a witness by "[s]howing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which he testified." § 90.608(1)(d), Fla. Stat. (1981). Florida jurisprudence has long sanctioned the admissibility of evidence disclosing that the witness took drugs either at the time he was testifying, or at the time of the occurrence of facts about which he has testified, for the purpose of impeaching his credibility. Eldridge v. State, 27 Fla. 162, 9 So. 448 (1891); Nelson v. State, 99 Fla. 1032, 128 So. 1 (1930). Our court has gone further, by permitting evidence of the witness's drug-taking at times other than during the occurrence of the offense. Morrell v. State, 335 So.2d 836 (Fla. 1st DCA 1976) (prosecuting witness's lengthy addiction to narcotics relevant for testing her credibility). In a somewhat analogous situation, we recently stated that evidence relating to a defendant's consumption of alcohol or narcotics at times other than during or immediately before the commission of an offense might be material in determining his mental capacity to form the specific intent necessary to commit the crime. Rivers v. State, 425 So.2d 101 (Fla. 1st DCA 1982).
What was at issue below was not the witness's competency to testify, but whether, as a result of his involvement with *695 drugs, his ability to remember accurately the facts which were the subject of his testimony was affected. We conclude that the lower court's limitation on the defense's cross-examination of a key government witness was an abuse of discretion.
II. The Order Granting the Motion In Limine as it Related to Restricting Inquiries of Any Offers or Statements of Plea Negotiations Made to Witness Smith Prior to or During His Trial.
The court granted the motion, permitting only testimony relating to any offers or negotiations that occurred following witness Smith's trial, at which he was found guilty of "simple" robbery and conspiracy to commit robbery. The court was of the opinion that any plea negotiations which occurred before Smith's decision to go to trial had been effectively revoked, and therefore such evidence was immaterial. The court also refused to allow the defense to make a proffer of its proposed questions, but it did state for the record outside the jury's presence that the proffer which the defense wished to make related to (1) an offer made before trial for Smith to receive a ten-year maximum sentence, and (2) certain discussions for Smith's possible eligibility for probation were he to plead guilty and testify against his co-defendants.
The defense was permitted to ask Smith whether, by changing his story and implicating himself and other persons, he expected to receive any leniency in exchange for such testimony. He replied that he did. The leniency he referred to was a lighter sentence. No details of the plea negotiations, however, were permitted.
In restricting the defense from inquiring into matters which were the subject of plea negotiations, the lower court may have been influenced by the state's reliance upon section 90.410, excluding statements relating to plea bargaining into evidence. From a superficial reading of the statute, one might conclude that evidence of any offers made in connection with plea negotiations is inadmissible at any proceeding. If this were the legislature's purpose in enacting section 90.410, it would constitute a serious infringement upon a defendant's sixth amendment right to examine his accusers. We are not convinced, however, that the statute was meant to be read so expansively. We consider, rather, that section 90.410 was intended to preclude evidence of thwarted plea negotiations only if such evidence is introduced at a later proceeding against the person who withdrew the plea or refused to accept the offer, provided he is a party to the proceeding. Moreover, we are persuaded that section 90.410 was never intended to bar evidence of plea negotiations for the purpose of impeaching a witness who appears at trial to offer testimony against an accused. Rather, the admissibility of such evidence is governed by the provisions of section 90.608(1)(b) of the Florida Evidence Code, allowing a witness's credibility to be impeached upon a showing that he is biased.
Our conclusion is supported by the comments of the Law Revision Council Note to the 1976 statute, which explain that exclusion of such evidence "has as its purpose the promotion of disposition of criminal cases by compromise." Law Revision Council Note-1976, 6B Fla. Stat. Ann., § 90.410 at 440 (1979). Obviously, such purpose is not frustrated by impeaching the testimony of a person, other than an accused, with inquiries directed to the witness's possible interest in giving testimony favoring the state in exchange for a promise of leniency.
The Law Revision Council's reference to two decisions in its note  Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) and Green v. State, 40 Fla. 474, 24 So. 537 (1898)  provides further support for our interpretation. Both cases involved defendants who had withdrawn pleas of guilty and then gone on to trial on the same charges to which they had formerly pled. Both cases disallowed evidence of the withdrawn pleas to be admitted against them as evidence of their guilt.
The 1978 amendment to section 90.410 and the Council's accompanying commentary finally foreclose any rational contention that the statute was designed to bar at any trial all evidence of statements made in *696 connection with pleas or offers. Before the 1978 amendment, the statute proscribed their admissibility, "except when such statements are offered for impeachment or in a prosecution under chapter 837." The 1978 amendment deleted the words "for impeachment." Consequently, such evidence is now admissible in a later prosecution only for perjury or false statement. The Council's commentary to the amendment states that it "conforms Section 90.410 to Fed.Rule Evid. 410 and Fla.R.Crim.P. 3.172(h),... ." 6B Fla. Stat. Ann. at 441. Significantly, Rule 3.172(h) excludes evidence of plea negotiations "against the person who made the plea or offer."[2] (emphasis supplied) Thus, if section 90.410 is to be interpreted consistently with the purpose stated in the Council's notes and the provisions of Rule 3.172(h), we consider it necessary to construe the amended statute in pari materia with both the Florida and federal rules.
The Council's reference to Federal Evidence Rule 410 also convinces us that section 90.410  despite its different wording  was intended to be an adaptation of Rule 410. In language similar to that of Rule 3.172(h), Rule 410 precludes the admission of such evidence "in any civil or criminal proceeding  against the person who made the plea or was a participant in the plea discussions... ." (emphasis supplied) The note adjoining Rule 410 explains it was the committee's purpose to limit the ban only against defendants:
Limiting the exclusionary rule to use against the accused is consistent with the purpose of the rule, since the possibility of use for or against other persons will not impair the effectiveness of withdrawing pleas or the freedom of discussion which the rule is designed to foster. See AMA Standards Relating to Pleas of Guilty, § 2.2 (1968).
Advisory Committee Notes to Rule 410, Federal Rules of Evidence, 28 U.S.C.A. at 168 (1975).
In their comments upon the effect of the 1975 amendment to Rule 410, which deleted the provision allowing the introduction of plea-related statements for general impeachment purposes against the person who made them, Wright and Graham regard the amended rule as continuing to permit the use of such statements to impeach the defendant when he testifies in a case in which he is not a party, because, under such circumstances, the statements are "beyond the scope of Rule 410... ." 23 C. Wright & K. Graham, Federal Practice and Procedure, § 5349, p. 416-17 (1980) [hereinafter: 23 C. Wright & K. Graham]. Accord United States v. Mathis, 550 F.2d 180, 182 (4th Cir.1976) (use of such statements in connection with a plea of guilty admissible to impeach a witness). Wright and Graham point out that the invocation of the rule by the government to bar a defendant on trial from using plea negotiations for the purpose of impeaching a prosecution witness "might run afoul of the Confrontation Clause." 23 C. Wright & K. Graham, supra, at 417.
We therefore conclude, after considering the stated purpose for prohibiting the introduction into evidence of statements made during plea negotiations, and the various comments, that the legislature in enacting section 90.410 did not intend to exclude such statements from being used to impeach persons other than the defendant on trial.
In the instant case, the lower court decided that because the state's offer of leniency was not accepted by Smith due to his resolution to go to trial, any plea negotiations which transpired before Smith's trial on the charge of robbery were immaterial. In doing so, the court appears to have injected principles of contract law into a factual setting that is instead controlled by the rule *697 of relevancy. The court placed undue emphasis on the witness's failure to accept the offer, rather than on the effect that the offer itself and other discussions may have had in causing Smith ultimately to change his decision not to testify. As the Fifth Circuit Court of Appeals recently observed:
[A] defendant's right to cross-examine a witness about any deals that may have been made or any understandings that may have been reached between the government and one of its witnesses does not hinge on whether in fact any such deals or understandings were effected... . `What tells, of course, is not the actual existence of a deal but the witness' belief or disbelief that a deal exists.'

United States v. Mayer, 556 F.2d 245, 249 (5th Cir.1977) (quoting from United States v. Onori, 535 F.2d 938, 945 (5th Cir.1976)) (emphasis in original). See also Lee v. State, 324 So.2d 694 (Fla. 1st DCA 1976), and Engram v. State, 405 So.2d 428 (Fla. 1st DCA 1981). Indeed, the defense's right to question a witness as to what representations were made to him is not dependent on whether they were approved by the court; the inquiries are germane to developing the witness's interest or bias in testifying. United States v. Benavides, 549 F.2d 392, 394 (5th Cir.1977).
It would be problematic for anyone to say with certainty whether the state's conviction of the appellant could have been effected without the key testimony of witness Smith. The other evidence admitted against Cruz and his accomplice Gilley was highly circumstantial. Smith was in fact the only witness who gave testimony against the appellant relating to the offense of conspiracy to commit robbery with a firearm. Given the crucial nature of Smith's testimony, the defense should have been permitted to make a more thorough examination of two vital areas bearing on the witness's credibility; his ability to relate accurately the facts pertaining to appellant's involvement in the offenses, and his interest or bias, if any, in testifying against the appellant. A comprehensive exploration of the former necessarily included inquiries directed to whether and how long Smith had consumed narcotics, and of the latter, questions relevant to plea negotiations which occurred both before and after Smith's trial.
We conclude that the lower court abused its discretion by unduly restricting the defendant's right to cross-examine the primary prosecuting witness in these two important sectors. Accordingly, the judgments of convictions are REVERSED and the case is remanded for new trial.
SHIVERS, J., concurs.
MILLS, J., dissents.
MILLS, Judge, dissenting:
I dissent.
Cruz was charged jointly with Gilley. They were tried together. They were represented by the same attorney. Both were found guilty as charged.
Both appealed the same day. The same trial transcript was used in each appeal. They were represented by the same attorney. He filed the same or similar briefs on behalf of both.
In Gilley v. State, 422 So.2d 358 (Fla. 1st DCA 1982), we affirmed the trial court in a two-to-one decision, the dissenting judge dissenting for the same or similar reasons that the majority now urges in reversing.
I would adhere to precedent, Gilley, supra, and affirm.

ON REHEARING
ERVIN, Chief Judge.
Appellee has filed with this court motions for rehearing and for rehearing en banc. The motion for rehearing en banc was considered by the full court, and, after deliberation, a majority determined not to consider it. The en banc motion argues that our disposition of this cause conflicts with this court's prior decision in Gilley v. State, 422 So.2d 358 (Fla. 1st DCA 1982), in which another panel of this court affirmed per curiam Gilley's conviction for the offense of robbery. Gilley and Cruz were co-defendants and were tried together, although their *698 cases were separately appealed. It appears from the dissent in Gilley that an issue was raised  as here  relating to the impermissible limitation of the defense's right to cross-examine witness Smith. It is not evident from the very brief opinion of the majority why it rejected this issue as non-reversible. The opinion merely stated that it found, from its examination of the record, "no reversible error." 422 So.2d at 358. Nevertheless, Gilley's conviction may have been sustainable for several reasons not disclosed in the opinion. One of course is harmless error. As it appears from our discussion of the facts in Cruz, Gilley's participation in the robbery was much more involved than that of Cruz, who drove only the getaway car. At any event, the majority's opinion in Gilley, written as it was, has no precedential effect on the outcome of our decision.
Because of the concern expressed in the state's motion for rehearing en banc and the dissent relating to conflict in our decisions, we consider it necessary to address the principles of stare decisis and res judicata and what effect, if any, a per curiam affirmance (PCA) that fails to address an issue on appeal has on a later opinion involving different parties which explicitly decides the same or a similar issue raised in the earlier case. As we recently recognized in State of Florida, Commission on Ethics v. Sullivan, 430 So.2d 928, 932 (Fla. 1st DCA 1983), if the same issues and parties are involved in two or more cases, a PCA becomes the law of the case, is res judicata, but is not stare decisis. Accord Department of Legal Affairs v. District Court of Appeal, Fifth District, 434 So.2d 310, 313 (Fla., 1983) ("... such a decision is not a precedent for a principle of law and should not be relied upon for anything other than res judicata."). Obviously, since there is no identity of parties in either the Cruz or Gilley cases, the doctrine of res judicata is inapplicable. Neither is the doctrine of stare decisis, because, as we observed in Sullivan, a PCA "establishes no precedential point of law." 430 So.2d at 932. There is no presumption that an affirmance without opinion is on the merits. Schooley v. Judd, 149 So.2d 587, 590 (Fla.2d DCA 1963), reversed on other grounds, 158 So.2d 514 (Fla. 1963). Moreover, even if an opinion is written, the decision may not be considered as precedent for a point not mentioned therein. 13 Fla.Jur.2d, Courts and Judges, s. 146, p. 270 (1979).
If there was any lingering doubt concerning the precedential effect of a per curiam affirmance without opinion on a later case involving different parties, such doubt was unquestionably laid to rest by the supreme court's recent opinion in Department of Legal Affairs v. District Court of Appeal, Fifth District:
The rationale and basis for the decision without opinion is always subject to speculation. In Newmons v. Lake Worth Drainage District, 87 So.2d 49 (Fla. 1956), the Court discussed several reasons for issuing per curiam decisions, some with written opinions and some without written opinions, and concluded: "In fine there is no limit to the grounds that may prompt a per curiam opinion." Id. at 51. Such uncertainty in itself negates a basis for reliance on an unwritten decision for guidance or precedence. We therefore recede from the language in Melser [State Department of Public Welfare v. Melser, 69 So.2d 347 (Fla. 1954)] on rehearing which implies that a per curiam decision without opinion can be cited as precedent.
434 So.2d at 312.
The motions for rehearing and rehearing en banc are denied.
SHIVERS, J., concurs.
MILLS, J., dissents with an opinion.
MILLS, Judge, dissenting:
I dissent. I would grant the State's motions for rehearing and rehearing en banc.
Although Cruz was charged jointly with Gilley; although they were tried together; although they were represented by the same attorney; although they both were found guilty as charged; although they both appealed the same day; although the *699 same trial transcript was used in each appeal; although they were represented by the same attorney; although the attorney filed the same or similar briefs on behalf of both; and although in Gilley v. State, 422 So.2d 358 (Fla. 1st DCA 1982), we affirmed the trial court in a 2 to 1 decision, the majority now adopts the Gilley dissent. Will Gilley understand and appreciate this action? Has justice prevailed? I think not.
This case should be affirmed.
NOTES
[1] Section 90.410 provides:

Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.
[2] The committee note to Rule 3.172(h) states that it is a "[r]ewording of Rule 11(3)(6) [this in fact is and should be a reference to 11(e)(6)] of the Federal Rules of Criminal Procedure." Committee Note, 33 Fla. Stat. Ann., Fla.R. Crim.P. 3.172 at 74 (1983 Pocket Part). Rule 11(e)(6), as amended in 1979, bars evidence of statements made during plea negotiations under certain specific conditions only "against the defendant who made the plea or was a participant in the plea negotiations: ... ."