450 So.2d 242 (1984)
Joseph Ted DUNCAN, Appellant,
v.
STATE of Florida, Appellee.
No. AT-446.
District Court of Appeal of Florida, First District.
April 13, 1984.
*243 Terry P. Lewis, Sp. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Chief Judge.
Duncan appeals his convictions for burglary with assault while armed and aggravated assault with a firearm, contending that the trial court erred in (1) limiting cross-examination of two state witnesses, and (2) admitting into evidence a photo lineup containing mug shots of Duncan. We affirm in part and reverse in part.
At trial, the evidence presented by the state included the testimony of only one eyewitness to the offenses, Douglas Welliver, who was at the home of his friend Michael Boulware on the morning of December 20, 1982 to assist with some carpentry work to the outside of Boulware's house. On the prior evening, the house had been burglarized and a large quantity of marijuana stolen. This theft, although discovered the morning of December 20, was not then reported. After Boulware and other friends departed later that morning, Welliver remained there alone at work. Upon entering the house shortly after 12:00 p.m., he reported that he saw a black man inside whom he did not then recognize, crouching behind a garbage can. According to Welliver, the man pulled a revolver and pointed it at him. The man rummaged through the house and when he left, he carried with him a plastic garbage bag with *244 coffee cans inside it, which Welliver believed contained marijuana belonging to Boulware. Some time later the incident was related to Boulware, and when he discovered, in addition to the missing cannabis, that some of his guns had also been taken, he determined to notify the police, but first proceeded to gather any remaining marijuana within the house and bury it. Consequently, the burglary which actually occurred between 12:00 and 1:00 p.m. was reported by Boulware and Welliver as having occurred around 3:00 p.m. When the police arrived, Welliver gave them a description of the suspect, and, the following afternoon, Welliver identified Duncan's picture from a photo lineup.
At trial, the court admitted the photo lineup, consisting of cropped mug shots, into evidence, over defense counsel's objection that the photographs were prejudicial, even though the bottom portions, identifying them as mug shots, had been excised. On cross-examination Welliver testified that he did not remember if he had smoked any marijuana on the morning of the incident, and, when defense counsel attempted to question him as to whether he had been a marijuana user for some time, the state objected, and the trial court sustained the objection on grounds of irrelevancy.[1]
Boulware corroborated that a substantial amount of marijuana had been stolen from his house the evening before the reported incident, but that he had failed to notify the officers that any marijuana had been stolen on either the 19th or the 20th for the obvious reason that he wanted to avoid trouble. He had, moreover, during the morning of the 20th, and before the burglary of that date, made an accusation at Duncan's home against Glenson Duncan, one of defendant's brothers, as the person responsible for the burglary the preceding night. When the defense attempted to make inquiries concerning Boulware's enterprises involving the growing and selling of marijuana for the purpose of showing that others had both access and opportunity to steal the marijuana, the trial court sustained the objection on the ground of irrelevancy to the crimes charged.
At the outset, we recognize that although wide latitude is permitted on cross-examination in a criminal proceeding, its scope and limitation lies within the sound discretion of the trial court and is not subject to review except for a clear abuse of discretion. Sireci v. State, 399 So.2d 964 (Fla. 1981). Section 90.612(2), Florida Statutes, provides that cross-examination of a witness is limited to the subject matter of the direct examination, and matters affecting the witness' credibility, although the trial court may, in its discretion, permit inquiry into additional matters.
Initially, we find that the lower court committed no error in limiting cross-examination concerning Boulware's marijuana activities and the opportunity others may have had to commit the crime by reason of their access to the house. Although we consider that testimony relating to the question of access by others would have *245 relevancy to the issue of how many persons besides the defendant may have known of Boulware's possession of large quantities of cannabis on the premises and would therefore have been motivated to enter illegally, we consider that no error occurred under the circumstances, despite the court's ruling that such testimony was irrelevant. The defense was permitted to obtain substantially all that it had sought by the proffer. Boulware admitted that others had access to the house while they played volleyball there, while working there, and while babysitting. Moreover, it was established that Duncan's sole accuser, Welliver, knew the location of the guns. Given the testimony admitted, we find no error.
The purpose of eliciting testimony from Welliver relating to the extent of his marijuana use, on the other hand, clearly was to impeach the credibility of his testimony identifying Duncan as the perpetrator of the crimes. We find our decision in Cruz v. State, 437 So.2d 692 (Fla. 1st DCA 1983), to be dispositive of the issue of whether Welliver's testimony concerning his marijuana usage was improperly excluded. There we recognized that such questions could be used to attack the credibility of the witness by "[s]howing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which he testified." § 90.608(1)(d), Florida Statutes (1981). We concluded that the trial court's limitation on the defense's cross-examination of a key state witness concerning his own drug use, both before and on the date of the occurrence of the offense charged, amounted to an abuse of discretion.
The above rule is especially applicable to the present case in that the evidence presented against appellant depended solely upon the credibility of Welliver's identification. The Duncans were, prior to the burglary of December the twentieth, suspected of burglarizing the Boulware home the preceding evening. Welliver himself was the only person allegedly present at the scene during the second occurrence. He and Boulware had initially given false information regarding the time of the incident in order to remove incriminating contraband from the house. Indeed, no timely report was made of the burglary alleged to have occurred on the nineteenth. That Welliver should have been subjected to thorough cross-examination is even more apparent in that appellant presented alibi testimony as to his whereabouts during the time of the alleged burglary, placing him then in a different location. Given the crucial nature of Welliver's testimony, we consider that its credibility should have been tested by all relevant questions. Certainly questions directed to the extent of time the witness had consumed narcotics were highly pertinent to the issue of potential misidentification. As we said in Cruz:
What was at issue below was not the witness's competency to testify, but whether, as a result of his involvement with drugs, his ability to remember accurately the facts which were the subject of his testimony was affected. We conclude that the lower court's limitation on the defense's cross-examination of a key government witness was an abuse of discretion.
437 So.2d at 694-95.
We do not agree that the photolineup consisting of cropped mug shots was improperly admitted into evidence as raising an impermissible inference of a prior conviction. It is true that an accused's right to a fair and impartial jury trial is violated when a jury is improperly made aware of defendant's arrest for unrelated crimes during the trial, Straight v. State, 397 So.2d 903 (Fla. 1981); however, despite a reference made to the use of a "mug shot" in a photographic lineup, but without the witness's specifically referring to a prior conviction, the Supreme Court of Florida in Sims v. State, 444 So.2d 922 (Fla. 1983), had held that such vague reference to other possible criminal activity was not so prejudicial as to require a new trial. Cf. Houston v. State, 360 So.2d 468 (Fla. 3d DCA 1978) (although the court ruled that the introduction of photographs clearly *246 identifiable as mug shots, showing a date prior to the date of the crimes charged, constituted reversible error, the court stated that if such photographs are properly cropped, such error could be cured). Accordingly, as the photographs here made no explicit reference to prior criminal activity by Duncan, we hold that their admission into evidence did not amount to reversible error.
The judgment of the trial court is AFFIRMED in part, REVERSED in part, and REMANDED for a new trial.
SMITH, J., concurs.
NIMMONS, J., concurring in part and dissenting in part.
NIMMONS, Judge, concurring in part and dissenting in part.
I agree with the majority that the trial court did not err in receiving into evidence the defendant's photograph.
However, I dissent from the majority's opinion that the trial court committed reversible error in sustaining the state's objection to defense counsel's questioning of Welliver as to whether he had "been a marijuana user for some period of time." (See pertinent portion of transcript at footnote 1 of the majority opinion.) I would not even reach the question as to whether the defense was entitled, under the holding in Cruz v. State, 437 So.2d 692 (Fla. 1st DCA 1983), to inquire into the witness' marijuana usage because it is apparent to me that the trial court's ruling, even if error, was harmless. The defense was successful in eliciting admissions from Welliver which demonstrated that he was a frequent user of marijuana. Welliver even admitted that, although he could not specifically recall, he may have smoked a "joint" the morning of the burglary, it being common for him to do so in the mornings before work. From a review of the record, it is apparent to me that the trial court afforded wide latitude to the defense in cross-examination of Welliver and, for that matter, in the examination of other witnesses. Control over the scope of cross-examination properly lies with the trial court and a conviction will not be overturned on that ground except where clear abuse of discretion is demonstrated. Powe v. State, 413 So.2d 1272 (Fla. 1st DCA 1982); Ho Yin Wong v. State, 359 So.2d 460 (Fla. 3rd DCA 1978). What limitations the trial judge did impose in this case were, in my opinion, well within the bounds of proper discretion.
Finally, although I agree with the result reached (affirmance) by the majority on the issue of whether the trial court reversibly erred in limiting defense cross-examination regarding the number of people who may have visited Boulware's residence and who may have known of the presence of marijuana on the premises, I am troubled by the majority's suggestion that the trial court may have erred in ruling that such inquiry was irrelevant. I fear that the majority's expressions on this point will encourage collateral inquiries which have only remote bearing on the guilt or innocence of the defendant. One might reasonably suppose from the majority's opinion that a person whose home is burglarized and who may have kept articles of value in his home can legitimately be subjected to thorough cross-examination as to the identity of friends and acquaintances who may have had occasion to visit the home and have knowledge of the presence of such articles of value, the inference being that one of such visitors may have been the burglar. I believe the trial judge was quite correct in ruling this kind of testimony to be irrelevant.
I would affirm the appellant's convictions.
NOTES
[1] The record of the questions and responses made reveals the following:

Q And you knew at the time that you got to work that whatever happened on the 19th dealt with a pot ripoff?
A Yes.
Q And, in fact, you may have even smoked a joint sitting around the table discussing what work was going to be done that day, didn't you?
MRS. SINGER: Your Honor, I'm going to object to that question as being totally irrelevant.
THE COURT: Overruled.
A I don't recall.
Q It was common to do that first thing in the morning, have a cup of coffee and 
MRS. SINGER: I'm going to object. The witness said he doesn't recall.
THE COURT: Objection overruled.
BY MR. MOLLICA:
Q It was common to sit around and have a cup of coffee and smoke a joint before you started to work, wasn't it?
A We had been known to do that, yes.
Q So what you're telling us is you can't be sure whether or not that's what happened on the 20th, but it could have happened?
A Yes.
Q And, in fact, you personally have been a marijuana user for some period of time?
MRS. SINGER: I'm going to object, Your Honor, as being irrelevant to this case.
THE COURT: Sustained.