501 So.2d 1379 (1987)
Charles WEBER, Appellant,
v.
The STATE of Florida, Appellee.
No. 86-184.
District Court of Appeal of Florida, Third District.
February 10, 1987.
*1380 Bennett H. Brummer, Public Defender, and John H. Lipinski, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Ralph Barreira, Asst. Atty. Gen., for appellee.
Before BARKDULL, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
Before arriving at its verdict finding the defendant guilty as charged, the jury learned from a source extrinsic to the trial that Weber had been previously convicted of, and sentenced to 99 years in prison for, the crimes for which he was on trial and that the conviction and sentence had been reversed because of a technicality. On this appeal, the defendant contends that neither the trial court's admonition to the jurors to *1381 disregard this information nor the jurors' assurances to the trial court that the information would not affect their deliberations were sufficient to show that the jury was not influenced by its receipt of this highly prejudicial information and thus to show that the guilty verdict ultimately rendered by the jury had been decontaminated. Concluding that the defendant is correct, we again reverse his conviction and remand the cause for a new trial.

I.
A brief history is in order. Weber was first tried and convicted on the charges of attempted second-degree murder and the unlawful possession of a firearm while engaged in such attempted murder. This court affirmed Weber's conviction without prejudice, determining that his claim that he did not receive effective assistance of counsel at his trial should be first made in the trial court. Weber v. State, 411 So.2d 315 (Fla. 3d DCA 1982). In 1983, after the defendant was unsuccessful in obtaining relief in the trial court, we concluded that in the face of reasonable grounds to believe that he was not competent to have been placed on trial in 1981, his counsel should have demanded, and the trial court, even without counsel's demand, should have required, a competency hearing. This "technicality," as it was to be later called, resulted in our reversing Weber's conviction and ordering that he be retried, but only after he was found to be competent to stand trial. Weber v. State, 438 So.2d 982 (Fla. 3d DCA 1983). Underlying the seriousness of putting an arguably incompetent defendant on trial, we subsequently upheld a trial court ruling excluding from Weber's new trial the reported testimony of a prosecution witness given at Weber's first trial. Weber v. State, 466 So.2d 345 (Fla. 3d DCA 1985).

II.
We come now to Weber's second trial  the case before us. Having been found competent to stand trial, Weber apparently deemed himself fit not merely to assist counsel, but, with the trial court's begrudging imprimatur (not challenged on this appeal), undertook to represent himself. And, when the critical moment came, Weber's self-representation, if not the paradigm of good lawyering, was certainly adequate; the error of which he complains on appeal was safely preserved.

A.
During its deliberations, the jury gave the bailiff a note to the judge, who in turn summoned Weber and the prosecutor to inform them of its contents.
"THE COURT: Let the record reflect that everybody is present.
"Gentlemen, I have received a communication from the jurors. It says: To Judge Snyder. During the deliberations, the six jurors took a vote as to whether we believe Mr. Weber shot Ricky Facen. After the vote, one of the jurors commented that Mr. Weber was convicted of these charges in a case previously and received a 99-year sentence that was later overturned on appeal for a technicality. The source from which the information came was the jury pool room yesterday, Thursday, November 14th, 1985. Two people were discussing the case and the juror overheard the comment. The jurors proceeded to deliberate and reached a decision with regard whether [sic] Mr. Facen was shot by Mr. Weber. Is a decision as to the guilt or not of the charges the next step?[1] Did the information about the previous case in finding contaminate what was done so far and can we still proceed? Signed, Alberta Gokey, foreman."
Weber's reaction was unhesitating and clear:
"MR. WEBER: Mistrial, whatever you call it.

*1382 "THE COURT: [calling for the prosecutor's response] Mr. Merrill?
"MR. WEBER: Start a new trial Monday, Your Honor."
The court denied the defendant's motion for mistrial[2] and instructed the jury:
"THE COURT: Ladies and gentlemen of the jury, what you brought to my attention is a very serious situation. Now, let me say this:
"Whatever happened in this case prior to this should be of no concern to you and it's certainly no concern to me. I do not know these statements here are true as a matter of my checking into it. I have not examined the file. I do not know exactly what happened in the prior case or the reasons for it. That's not my job. My job is to try this case.
"Now, assuming that the information that you received was correct  it's possible that it was; I don't know, but it's possible that it was  would that in any way affect your deliberations in this case? Would that affect your ability to determine the facts in this case, whether Mr. Weber was convicted of these charges at a prior time and reversed on appeal or not?
"In other words, every time a person wins an appeal it's another case, it's another trial and another jury, not the jury that originally heard the case, has to come in and decide facts.
"It is unfortunate that you people, whoever it was, after my admonishment of you exactly to that effect even listened to it. This case has taken all week.
"Now, you just tell me if anybody is going to be tainted by this information? That's the way it is. Facts don't change.
"Let me go down the list."
The court thereupon asked each juror whether the information would affect him or her in any way and received from each a negative response. Satisfied with these answers, the court sent the jury back to resume deliberations. Before long, it returned a guilty verdict.

B.
It is well established that a requisite of the fair jury trial to which an accused is constitutionally entitled is that there be "a panel of impartial, `indifferent' jurors." Murphy v. Florida, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594 (1975) (quoting Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961)). While it is also said that a juror may be deemed to be fair and thus qualified to sit even though not "totally ignorant of the facts and issues" in the case, a juror's assurance that he is equal to the task of laying aside his impressions or preconceived notions is not dispositive of the question of the juror's ability to be impartial, indifferent, and fair. Murphy v. Florida, 421 U.S. at 800, 95 S.Ct. at 2036, 44 L.Ed.2d at 594-95.
Courts which have confronted the discrete issue posed by the present case have uniformly concluded that the prejudice arising from the exposure of jurors to information that the defendant was previously convicted of the very offense for which he is on trial is so great that neither an ordinary admonition of the jurors nor the jurors' ritualistic assurances that they have not been affected by the information can overcome it.
In the leading case of United States v. Williams, 568 F.2d 464, 465 (5th Cir.1978), the court addressed the issue of "whether exposure of jurors, during the second trial, to news reports containing references to defendants' conviction in the first trial deprived appellant of a fair trial." According to the court, the newscast, essentially about the commencement of the second trial, ended with a statement that the defendants had been convicted in the first *1383 trial, but that the verdict had been overturned because of "erroneous testimony." Five jurors admitted knowing of the report; two jurors admitted actually seeing the newscast. The ones who had seen the story assured the trial judge that it would not influence them in deciding the case.[3] The court instructed the jury as a whole to disregard everything not heard in court.
Noting abundant authority regarding as inherently prejudicial news stories published during the trial that reveal to jurors a defendant's prior criminal record, the court in Williams concluded that, a fortiori, information revealing that the defendant was previously convicted of the crime for which he is on trial is inherently prejudicial:
"Indeed, we are hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged."
Id. at 471.
Moreover, in the court's view, the fact that the newscast mentioned that a new trial had been granted because of "erroneous testimony," a statement "which, although accurate, could easily be interpreted by a layman as meaning that `the defendants got off on a technicality,'" id. at 470, exacerbated the prejudice of the newscast. The court, in reversing the defendant's conviction, concluded that neither the perfunctory admonition "to disregard everything not heard in court" nor the jurors' well-meaning assurances that "the story would in no way influence their decision in the case" dissipated the harm of the prejudicial information.
Other courts, citing Williams, have agreed that information that the defendant has been previously convicted of the crime for which he is being tried almost stands alone in its capacity to prejudice. See Cappadona v. State, 495 So.2d 1207 (Fla. 4th DCA 1986) (conviction reversed despite assurances from the three jurors who during trial had read news article revealing that defendant had been previously convicted of the crime for which he was now on trial, and despite several admonitions to jurors to disregard media reports of the trial)[4]; Hughes v. State, 490 A.2d 1034, 1044 (Del. 1985) ("It seems unreasonable to expect a juror to divorce from his deliberative process, knowledge that a defendant has been previously tried and convicted, and following a reversal has been once again subjected to prosecution. The mere expenditure of so much time and expense on the part of the State might lead the average lay person to assume that such a defendant must, in fact, be guilty." (footnote omitted)). See also United States v. Attell, 655 F.2d 703 (5th Cir.1981) (reversal required where trial court refused to poll jurors as to whether they had seen newscast revealing that the defendant's conviction on the same charges for which he was now on trial had been reversed because of the admission of some hearsay testimony). Implicit in Williams and its progeny, as evidenced by the very discussion of the quality of the admonition given to the jurors and the quality of the assurances given by the jurors, is that the exposure of sitting jurors to this prejudicial material does not ipso facto require that a mistrial be granted or that the jurors so exposed be stricken. Instead, such exposure raises a presumption that the jurors will no longer be able to fairly consider the issue of the defendant's guilt, a presumption which may be overcome only if the jurors are specifically and meaningfully admonished in the very strongest terms and, with a solemnity befitting their oaths, assure the court that the information which has wrongfully come to them absolutely will play no part in their verdicts. Thus, an ordinary admonition, as in Williams, that is indistinguishable from other admonitions *1384 given during the trial to disregard everything not heard in court, or one, as in Cappadona, that is indistinguishable from other admonitions given during the trial to disregard media reports of the trial, are not, as a matter of law, sufficiently specific, meaningful or strong to impress upon jurors the unfairness of their considering the prejudicial information. Similarly, an inquiry designed to elicit a simple yes or no response to the question whether the information will influence the juror's verdict or whether the juror is capable of putting the information out of his mind is much too perfunctory to be accepted in any case, much less one in which, as here, juror disobedience of the court's previous instructions has led to the receipt of the prejudicial information. In such a case, jurors are likely to believe that an answer indicating that they are able to carry on their duties despite their receipt of the prejudicial information is expected by the court in expiation of the sin of having disobeyed the court's instructions and having caused the predicament that could lead to possible mistrial.[5]

III.
In our view the present case is a stronger one for reversal than Williams. First, unlike Williams, we need not speculate as to whether the jurors might have believed the conviction at the first trial was reversed because of a technicality: that it was reversed because of a technicality is precisely what the Weber jury was told. Second, unlike Williams, the jurors in the present case were informed that Weber's conviction in the first trial resulted in a ninety-nine year sentence, information that impermissibly conveys to a jury that Weber is far from a first offender and suggests instead a criminal background. Third, the admonition in Williams to "disregard everything not heard in court," as inadequate as it is, is far stronger than the trial judge's musings in the present case about whether the prejudicial information was accurate or not.[6]
The State relies on Teffeteller v. State, 495 So.2d 744 (Fla. 1986), as supporting an affirmance. In Teffeteller, a death sentence was vacated and the cause remanded for resentencing. At the resentencing hearing, the new jury was informed that Teffeteller had been previously sentenced to death. Although concluding that this entirely non-probative information could conceivably be highly prejudicial to a defendant, the Supreme Court nonetheless found that reversal was not required because (1) defense counsel had expressly and repeatedly waived any objection to this information by (a) conceding that jurors who had knowledge of the prior death sentence could not be challenged for cause and (b) eliciting from his own witnesses, including the defendant himself, references to the prior death sentence; and (2) at no time was the jury informed of the prior jury's recommendation, but merely that a death sentence had been imposed by the original trial judge. Teffeteller is thus clearly distinguishable from the present case and to a large extent supportive of the result we reach.[7]

*1385 IV.
At oral argument, the State candidly admitted that the evidence against the defendant was not overwhelming, and had the defendant not chosen to represent himself, this would have been a "tough case" for the State. Our assessment of the record is much the same. We therefore conclude that, assuming, arguendo, the application of the harmless error test,[8] the error of permitting the jury to continue its deliberations was not harmless beyond a reasonable doubt. Because the case is remanded for a new trial, we note that the defendant was unduly restricted in his cross-examination of the victim concerning the victim's use of drugs. See Duncan v. State, 450 So.2d 242 (Fla. 1st DCA 1984); Cruz v. State, 437 So.2d 692 (Fla. 1st DCA 1983). Our specific mention of the undue restriction on cross-examination is not to be taken to mean that we have considered and passed upon the merits of other points raised by the defendant. Our silence as to these other points means only that we do not consider it likely that they will arise upon a retrial of this case.
Reversed and remanded.
NOTES
[1] The State's contention that the jury had already reached its verdict when it learned of this information is belied by the record.
[2] There was little doubt as to the meaning of Weber's words:

"THE COURT: Mr. Weber, I'll take your statement `mistrial' for what we call a motion for mistrial.
"MR. WEBER: That's what I meant, Your Honor. I'm not a lawyer."
[3] There is no indication that the other jurors were asked to give this assurance, apparently because, although knowing about the report, they did not know of its contents.
[4] Cappadona v. State involves the additional prejudice to the accused arising from the fact that the news article revealed that his defense at the first trial differed from or was inconsistent with his defense at the second trial.
[5] Cases involving a full, complete, and incisive voir dire examination of prospective jurors who, without having disobeyed the court's instructions, are aware of information that the defendant was previously convicted of the crime for which he is standing trial are thus distinguishable. Compare Patton v. Yount, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) with Hughes v. State, 490 A.2d 1034 (Del. 1985).
[6] There is yet another distinction between this case and Williams and most others. While, given the harmless error rule, it is clear that no case can be reversed on a "technicality" or for a reason that has not been determined to have probably affected the defendant's right to a fair trial, it is noteworthy that the reason for the reversal of Weber's conviction is that there was a failure to determine his competency to stand trial. This means, as we held in Weber v. State, 466 So.2d 345, (Fla.App., 3 Dist. 1985), that the guilty verdict in Weber's first trial is entirely untrustworthy, and the prejudice of jurors learning of it is therefore even greater to the defendant than had the case been reversed on some other ground.
[7] We have not overlooked Watson v. State, 270 So.2d 407 (Fla. 3d DCA 1972), but it simply does not involve information concerning the defendant being previously convicted of the offense for which he is standing trial, the prejudice of which, as we have said, is of a far greater magnitude than information concerning other offenses or convictions. Moreover, Watson may be regarded as a harmless error case, and, if so, is distinguishable from the present case on that ground as well.
[8] In Arthur v. Bordenkircher, 715 F.2d 118 (4th Cir.1983), the court decided that defense counsel's acquiescence in the jury's being instructed at the outset of the trial that "the defendant had been convicted by another jury for the same murder but was being retried because his earlier conviction had been reversed on procedural grounds," id. at 118, was ineffective assistance of counsel which so irreparably prejudiced the defendant that it could not be deemed harmless "even though the evidence of guilt was great and the defense of insanity tenuous," id. at 120. In this unique setting, where the jury is informed by the court that it is proper to consider this prejudicial information, perhaps the error can never be deemed harmless. But, no matter how inadequate the admonition and assurances were in the present case, it is clear that the jurors could not conclude that their receipt of the prejudicial information met with the court's approval.