KAHN, C. J.,
concurring in part, dissenting in part.
I respectfully disagree with the majority’s finding that the State’s attempted revocation of Junior’s plea agreement and Elliot’s acquittal were properly excluded under section 90.403, Florida Statutes (2002). Although I agree with the majority as to the remaining issues on the direct appeal,[2] I concur with Judge Ervin’s dissent on the threshold question of en banc consideration.. I also completely agree with the second and third paragraphs in Judge Wolfs opinion concerning the pur *106 ported reasons that this court has taken the case en banc. Nevertheless, as the author of the original panel opinion in this case, I am compelled to reach the merits and particularly to express my views where they disagree with the en banc mar jority. Accordingly, even though I am firmly convinced this court does not have the jurisdiction to take this case en banc, a majority of the court feels otherwise and, for that reason, the first portion of my opinion goes to the merits.

MERITS

A. The State’s Attempted Revocation of Junior’s Plea Agreement

I conclude that the trial court abused its discretion by excluding mention of the revocation notice and certain statements made by the State during the revocation hearing. This evidence would have tended to show that the State entertained serious doubts about the credibility of its key witness and, most importantly, that the revocation attempt effectively forced Junior to stick to his latest and more detailed version of events. Although the evidence would have been prejudicial to the State, it would not have been unfairly prejudicial.
The State’s revocation notice was admissible for the same reasons that support the admissibility of a plea agreement or documents showing a continuing relationship with the State. In Davis v. Alaska, the U.S. Supreme Court observed:
A more particular attack on the witness’ credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is “always relevant as discrediting the witness and affecting the weight of his testimony.”
415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (emphasis added) (citations omitted). Here, the trial court’s exclusion of examination relating to the State’s attempted revocation of Junior’s plea agreement precluded the jury from considering a feasible source of bias in Junior’s testimony.
“It is well established that great latitude is allowed the defense in the cross-examination of a witness to determine his interest, his opportunities for observation, his disposition to speak truthfully, and his ability to speak accurately.” Cruz v. State, 437 So.2d 692, 694 (Fla. 1st DCA 1983); see also Hair v. State, 428 So.2d 760, 762 (Fla. 3d DCA 1983); Henry v. State, 688 So.2d 963, 966 (Fla. 1st DCA 1997). The latitude allowed in cross-examination arises out of the defendant’s right to confront an adverse witness under the Sixth Amendment to the U.S. Constitution. See Lewis v. State, 591 So.2d 922, 925 (Fla. 1991) (finding limitations on cross-examination “clearly unreasonable where ... they have the effect of precluding constitutionally adequate cross-examination”). Florida courts have routinely applied the premise of Davis v. Alaska to establish “that a defendant has the right to fully cross-examine an adverse witness to reveal any bias, prejudice, or improper motive the witness may have had in testifying against the defendant.” Yolman v. State, 469 So.2d 842, 843 (Fla. 2d DCA 1985). The rule takes on increased importance where a key witness is being examined. As the supreme court has stated:
The right of a criminal defendant to cross-examine adverse witnesses is derived from the Sixth Amendment and due process right to confront one’s accusers. One accused of crime therefore has an absolute right to full and fair cross-examination. Coco v. State, 62 *107 So.2d 892 (Fla.1953). A limitation on cross-examination that prevents the defendant from achieving the purposes for which it exists may be harmful error.
The proper purposes of cross-examination are: (1) to weaken, test, or demonstrate the impossibility of the testimony of the witness on direct examination and, (2) to impeach the credibility of the witness, which may involve, among other things, showing his possible interest in the outcome of the case.
Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982); see also Watts v. State, 450 So.2d 265 (Fla. 2d DCA 1984).
As an example, when a key prosecution witness is awaiting sentencing in another case, the defense may demonstrate that such witness “has a desire to testify so as to please the authorities.” Watts, 450 So.2d at 268. Such an inquiry “is permissible for the purpose of demonstrating the witness’ bias or motive for testifying for any reason other than to tell the truth.” Id. The right of full cross-examination in order to expose a motivation for a witness to testify untruthfully “is a fundamental tenet of due process.” Tomengo v. State, 864 So.2d 525, 530 (Fla. 5th DCA 2004). Courts have even been so blunt as to posit that a “trial court does not have the discretion to exclude questions which touch upon interest, motive, or animus.” Id.
Despite the paramount importance of such cross-examination, a trial court may limit examination of the State’s witness “to take account of such factors as ‘harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that [would be] repetitive or only marginally relevant.’ ” Lewis, 591 So.2d at 925 (quoting Olden v. Kentucky, 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988)); see also Moore v. State, 701 So.2d 545, 549 (Fla.1997). Given the priority afforded by our law to full cross-examination, however, I conclude that the trial court’s exclusion of evidence relating to the State’s attempted revocation of Junior’s plea deal did not achieve any of the recognized purposes for limiting cross-examination. The nature and potential impact of the excluded evidence leads me to conclude that it would have been much more than “marginally relevant” to appellant’s defense. Rather than being repetitive or confusing, the excluded evidence may well have assisted the jury in viewing the full picture which the defense sought to develop. Moreover, exclusion of the evidence did not shield Junior from undue harassment, nor did it serve to ensure his personal safety.
I cannot credit the State’s contention that the revocation was insufficient to show bias on Junior’s part because: 1) he changed his story before the State filed the notice; and 2) the trial court denied the revocation before Junior testified at appellant’s trial. The State argues that the notice did not exert continuing pressure on Junior to testify in a certain manner. The notice itself, however, demonstrates that Junior added substantial and graphic details to his story that were exceptionally harmful to appellant’s case. The addition of these details provoked the State into the attempted revocation of Junior’s plea agreement. A jury made aware of the events immediately preceding Junior’s testimony could have reasoned that Junior was bound to stick to the latest version of his story for fear that the State may once again attempt a revocation of his plea agreement. Given the broad discretion granted to the State Attorney in determining whether Junior had provided “substantial assistance,” I find it unreasonable to conclude that Junior would feel no pressure at all to testify in conformity with his January statements.
Whether the State would have, in fact, retaliated against Junior for failing to tes *108 tify in accordance with his new story, is irrelevant to the issue of -bias. The important consideration is whether the jury could have concluded that the attempted revocation affected Junior’s credibility. In Fannin v. State, 581 So.2d 974 (Fla. 1st DCA 1991), this court addressed the distinction between a witness’ perception of the facts and the actual facts. In that case, the trial court ruled that the defendant could not cross-examine his co-defendant regarding her understanding of any deal the State may have had with the co-defendant’s mother, who had been charged with drug offenses. Id. at 975. This court concluded that “the trial court abused its discretion by unduly restricting appellant’s right to cross-examine [the witness] on the issue of her perception of any deals made with her mother.” Id. at 976. In Cruz v. State, this court observed:
[A] defendant’s right to cross-examine a witness about any deals that may have been made or any understandings that may have been reached between the government and one of its witnesses does not hinge on whether in fact any such deals or understandings were effected .... “What tells, of course, is not the actual existence of a deal but the witness’ belief or disbelief that a deal exists.”
437 So.2d at 697 (quoting United States v. Mayer, 556 F.2d 245, 249 (5th Cir.1977)). Cruz instructs that “the defense’s right to question a witness as to what representations were made to him is not dependent on whether they were approved by the court; the inquiries are germane to developing the witness’s interest or bias in testifying.” Id. Here, the appellant sought to reveal a circumstance which could have impacted Junior’s testimony. Whether the State’s dramatic revocation attempt after the Elliot acquittal colored Junior’s testimony was a question for the jury to consider. See Breedlove v. State, 580 So.2d 605, 608 (Fla.1991) (“The constitutional right to confront one’s accuser is meaningless if a person charged with wrongdoing is not afforded the opportunity to make a record from which he could argue to the jury that the evidence against him comes from witnesses whose credibility is suspect because they themselves may be subjected to criminal charges if they fail to ‘cooperate’ with the authorities.”) (quoting Morrell v. State, 297 So.2d 579, 580 (Fla. 1st DCA 1974)).
Acknowledging defense counsel’s vigorous impeachment of Junior with prior inconsistent statements, I cannot agree with the majority’s assertion that the probative value of this piece of evidence was substantially outweighed by the danger of unfair prejudice to the State. The revocation attempt imposed a new dynamic that went far beyond some mere memory problem. Without knowledge of the revocation proceedings, the jury could not consider whether Junior’s recent recollections were merely the product of improved memory, or whether other motivating forces were at play. Accordingly, I find that the trial court should have admitted into evidence the revocation notice and relevant statements made by the State during the hearing on the revocation.[3]

*109
B. The Elliot Verdict

Although I am unable to conclude that the trial court abused its discretion in excluding the Elliot acquittal, the appellant should have been afforded an opportunity to explain the temporal context of Junior’s changed testimony. The trial court should have allowed inquiry to the extent reasonably necessary to show that context, without publishing the result of the Elliot trial. The trial court could have simply provided a limiting instruction “to avert any possible misunderstanding on the jury’s part.” Rease v. Anheuser-Busch, Inc., 644 So.2d 1383, 1387 n. 4 (Fla. 1st DCA 1994).

EN BANC JURISDICTION

I dissent vigorously to the majority’s en banc review of this case. Perhaps to its credit, the majority has not even attempted to set out an adequate jurisdictional statement to support en banc consideration. Judge Ervin, on the other hand, has eloquently explained why this court does not have the authority to violate the requirements of the Florida constitution and statutes directing consideration of cases by three-judge panels of the district courts of appeal. See Art. V, § 4(a), Fla. Const.; § 35.13, Fla. Stat. (2004).
If one looks only at the facts and applicable law in this case, no matter of exceptional importance can be divined. The courts of this State routinely reverse trial judges for limiting cross-examination, particularly on issues of bias or interest. In a typical exposition of this principle, the Second District stated:
Bias or prejudice of a witness has an important bearing on his credibility and evidence showing such bias is relevant. Webb v. State, 336 So.2d 416 (Fla.App.2d DCA 1976). It is proper to elicit facts tending to show bias or prejudice of a witness in cross-examination of that witness. Davis v. Ivey, 93 Fla. 387, 122 So. 264 (1927). This becomes an important right to a defendant in a criminal case where the jury must know of any improper motives of a prosecuting witness in determining that witness’ credibility. See Roberts v. State, 164 So.2d 817 (Fla. 1964); Stewart v. State, 58 Fla. 97, 50 So. 642 (1909); Kirkland v. State, 185 So.2d 5 (FIa.App.2d DCA 1966); Stradtman v. State, 334 So.2d 100 (Fla.App.3d DCA 1976); Simmons v. Wainwright, 271 So.2d 464 (Fla.App. 1st DCA 1973). It is a fundamental principle that matters tending to show bias or prejudice in a criminal prosecution may be inquired about even when they were not mentioned in direct examination. Wallace v. State, 41 Fla. 547, 26 So. 713 (1899). Cf. Gard, Florida Evidence, P. 747 (1967); 81 Am.Jur.2d, Witnesses, Section 548.
McDuffie v. State, 341 So.2d 840, 841 (Fla. 2d DCA 1977). The Southern Reporter is literally crammed with Florida cases reversing criminal convictions ■ because the trial court abused its discretion by limiting cross examination. As a mere digest, I offer the following:
• Murray v. State, 838 So.2d 1073, 1083-85 (Fla.2002) (finding the trial court erred in precluding cross-examination of State’s expert witness as to conversation he had with defense’s expert witness);
• Garcia v. State, 816 So.2d 554, 561-63 (Fla.2002) (finding the trial court erred in precluding the use of videotaped statements to impeach key State witness);
*110 • Lewis v. State, 591 So.2d 922, 925-26 (Fla.1991) (answering certified question and finding the trial court erred in limiting cross-examination of sexual battery victim to preclude evidence of her sexual activities with a third-person; remanding to the district court for further proceedings);
• Baucham v. State, 881 So.2d 95, 97 (Fla. 1st DCA 2004) (finding the trial court erred in precluding cross-examination of police officers regarding defendant’s complaints to police chief about the officers’ performance before his arrest);
• Mouery v. State, 884 So.2d 1029, 1030 (Fla. 4th DCA 2004) (finding the trial court erred in not allowing appellant to cross-examine arresting officer as to statements appellant had made upon his arrest);
• Jackson v. State, 881 So.2d 711, 713 (Fla. 3d DCA 2004) (finding the trial court erred in refusing to allow appellant to impeach State witness with statements made during deposition);
• Mitchell v. State, 862 So.2d 908, 912 (Fla. 4th DCA 2003) (finding trial court’s limitation of cross-examination improper because “the credibility of the defendant and the alleged victim, on the one hand, and one of the State’s chief witnesses, on the other, were crucial to the case, any evidence tending to prove a motive to lie by the State’s witness is both relevant and admissible”);
• Stotler v. State, 834 So.2d 940, 943-44 (Fla. 4th DCA 2003) (finding the trial court erred in precluding appellant from cross-examining co-defendant as to conversations that occurred during a transaction shown on a videotape entered into evidence by the State);
• Hinojosa v. State, 857 So.2d 308, 310 (Fla. 2d DCA 2003) (finding the trial court erred in prohibiting cross-examination of police officer regarding prior investigations into excessive use of force);
• Shaw v. State, 831 So.2d 772, 774 (Fla. 4th DCA 2002) (finding the trial court erred in excluding evidence of appellant’s complaints against police officers for use of excessive force during his arrest);
• Barows v. State, 805 So.2d 120, 122 (Fla. 4th DCA 2002) (finding the trial court erred in prohibiting appellant from cross-examination of State witness regarding the witness’ potential civil forfeiture of money “where such evidence was relevant to show bias or motive to lie”);
• Davis v. State, 756 So.2d 205, 208 (Fla. 4th DCA 2000) (finding the trial court erred in precluding cross-examination of victim in regard to material omissions made during pretrial statements);
• Washington v. State, 737 So.2d 1208, 1219 (Fla. 1st DCA 1999) (finding the trial court erred in limiting cross-examination of the mother of an infant allegedly killed by appellant where proffered testimony was exculpatory in nature);
• Sanjurjo v. State, 736 So.2d 1263, 1264 (Fla. 4th DCA 1999) (finding the trial court erred in precluding cross-examination regarding omissions made by the State’s witness during previous statements);
• Purcell v. State, 735 So.2d 579, 581 (Fla. 4th DCA 1999) (finding the trial court erred in not allowing appellant to ask whether the State’s witness previously offered to “let the case go away” in exchange for money);
*111 • McBean v. State, 688 So.2d 383, 385 (Fla. 4th DCA 1997) (finding the trial court erred in not allowing cross-examination of State witness with regard to omission made in pretrial statements);
• Chadwick v. State, 680 So.2d 567, 568 (Fla. 1st DCA 1996) (finding the trial court erred in excluding evidence of appellant’s threatened lawsuit and internal investigation regarding police abuse arising after appellant’s arrest);
• Livingston v. State, 678 So.2d 895, 898 (Fla. 4th DCA 1996) (finding the trial court erred in precluding cross-examination connecting the disposition of key witness’ criminal case with his testimony in appellant’s case).
The extremely fact-specific nature of this case is demonstrated most graphically by the majority per curiam opinion and by Judge Thomas’ special concurring opinion. The majority applies the familiar rule of section 90.403, Florida Statutes, and simply reaches a different result than the one I believe is correct. Judge Thomas goes beyond the per curiam opinion and, after enumerating the details of Junior’s testimony, concludes that the error here was harmless. Although the definition of harmless error might well be a basis for en banc jurisdiction, the determination that a particular error was harmless is, by its very nature, one of the most highly case-specific determinations made by an appeals court.

CONCLUSION

A majority of this fifteen-judge court has decided, for a variety of reasons, that appellant’s conviction should be affirmed. In doing so, they have, regretfully in my view, paid little heed to the applicable constitutional and statutory provisions. They have also not honored the rule of appellate procedure establishing the very limited exception to the requirement of a three-judge panel: “En banc hearings and rehearing shall not be ordered unless the case is of exceptional importance or unless necessary to maintain uniformity in the court’s decisions.” Fla. RApp. P. 9.331(a). In adopting this rule, our supreme court could have hardly chosen a stronger modifier than “exceptional.” This means more than merely out of the ordinary, more than merely significant, and certainly more than disagreeable in the estimation of other members of the appellate court.
Whether our supreme court will determine in the future that it has jurisdiction to review this en banc decision is clearly beyond my ken. Nevertheless, if there were ever a case in which the supreme court should take upon itself to limit the jurisdictional boundaries of en banc consideration, this is the case. In fact, and perhaps ironically, the only matter of exceptional importance in this entire case is whether en banc jurisdiction exists at all.

. Because I would reverse the conviction, I do not reach the question of restitution raised by the State on cross-appeal. Although I agree with much of the sentiment expressed in the majority opinion, that opinion creates direct conflict by its interpretation of section 775.089, Florida Statutes (2002). See, e.g., Lewis v. State, 874 So.2d at 18, 20 (Fla. 4th DCA 2004) (finding that “the sheriff's office does not meet the statutory definition of 'victim' ”); Jones v. State, 846 So.2d at 662-63 (Fla. 2d DCA 2003) (same); Sheppard v. State, 753 So.2d 748, 748 (Fla. 2d DCA 2000) ("The Division of Insurance Fraud is not a 'victim' in this case and cannot receive restitution.''); Sims v. State, 746 So.2d 546, 547 (Fla. 2d DCA 1999) ("The State does not qualify as a victim for payment of restitution

. The statements made by the State during the revocation hearing are also admissible as opposing party admissions. See United States v. Morgan, 581 F.2d 933, 937 n. 10 (D.C.Cir.1978)("[T]he Federal Rules [of Evidence] clearly contemplate that the federal government is a party-opponent of the defendant in criminal cases, and specifically provide in certain circumstances statements made by government agents are admissible against the government as substantive evidence.”); State v. Worthen, 765 P.2d 839, 847-48 (Utah 1988)("The prosecutor can hardly be considered a disinterested party or his statements any less an admission on the State's part than the statements of any other attorney.”); Allen *109 v. State, 787 N.E.2d 473, 479 (Ind.App.2003)("As we have already found that the Indiana rule on party-opponent statements applies against the government in civil cases, we see no reason why it should not apply in criminal cases.").