450 So.2d 265 (1984)
Jack Lester WATTS, Appellant,
v.
STATE of Florida, Appellee.
No. 83-751.
District Court of Appeal of Florida, Second District.
April 27, 1984.
*266 Jerry Hill, Public Defender, Bartow, and Amelia G. Brown, Asst. Public Defender, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Theda James Davis, Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Acting Chief Judge.
The appellant appeals his conviction for second degree murder on grounds that the trial judge unduly restricted his cross-examination of two key state witnesses, Johnny Lee Ruebin and Christopher Beasley, in violation of his constitutional right to confront and fully cross-examine adverse witnesses against him. We agree in part and reverse for a new trial.
At the trial the testimony revealed the following scenario. On the night in question, the appellant, Beasley, Ruebin, and the victim, Charles Loman, were all at the Hancock Lounge in Tampa. Beasley, who was in the lounge near the screen door, looked out and saw Loman run toward an old brown Cadillac and greet the appellant. Next, Loman and the appellant approached the bar and greeted Beasley. At that time, Beasley saw a gun handle sticking out of the appellant's pants. The appellant and Loman then stood and talked just outside the screen door where Beasley was listening. Finally, Loman went inside and Beasley turned his attention to a pool game. The next time Beasley saw Loman and the appellant, the two of them went back outside and walked around the corner of the building. Three or four minutes later, Beasley followed them outside to the back corner of the building where he stood by a phone booth and watched them as they stood about a foot apart and talked. When Beasley saw the appellant raise the gun and point it at Loman, Beasley backed away. He then saw Loman running around the corner, heard gunshots, and ran into the bar with most of the other people who had been standing outside. Ruebin, who had been among those standing outside, ran around the side of the building as soon as he heard the shots. He saw a 5'11" man whom he did not recognize jump into the passenger side of a parked 1968 or 1969 Cadillac and watched the car drive away before he ran back into the bar where he found Loman lying on the floor.
At the trial the appellant's attorney cross-examined the state's witnesses, Ruebin and Beasley. To demonstrate their *267 bias or motive, the appellant's attorney attempted to ask them whether they were presently on probation, resided in the county jail, or had a new charge or probation revocation pending. The trial judge refused to allow such questioning.
Counsel then stipulated to proffers of the cross-examinations of Ruebin and Beasley on these matters. The appellant argued that Ruebin, currently on probation, would say that he had no particular compulsion to testify; he was not in custody; he had no charges pending; he was not on probation at the time of the murder when he gave his statement to the police; but he did have a charge pending by the time his deposition was taken. Beasley, currently residing in the county jail, would say that at the time he gave his statement implicating appellant, he was on two years probation. Beasley would further say that by the time of trial he was facing revocation of this probation and that, if this probation was revoked, he could be sentenced to fifteen years in prison in addition to a maximum sentence of twenty years for the new felony charge pending. Beasley would also add that his probation revocation hearing was scheduled for Friday of the week of appellant's trial, that his assigned judge had been made aware of his testimony in appellant's case, and that he had discussed his situation with the state attorney's office.
In a motion for new trial, appellant's attorney contended that the court's restriction of cross-examination of these two witnesses had prevented the jury from hearing appellant's theory of defense. That theory of defense was that because Beasley was on probation, had a felony charge pending and a revocation hearing pending, he had tailored his statements and testimony to the exigencies of that situation. In support of this motion, appellant's counsel attached a copy of Beasley's probation revocation hearing transcript. The transcript reveals that prior to entry of Beasley's guilty plea, the following argument was presented to the court by the prosecutor:
Your Honor, Mr. Beasley is on probation with this Court for burglary. During the course of that period of probation he committed some new offenses.
He delivered a small amount of cannabis at Hancock's Bar. However, prior to him committing the new offenses, he became a material witness in a second-degree murder case.
Mr. Beasley testified this last week. He was the only eye-witness to this crime. He was the dominating factor which led to the conviction of Mr. Watts on a second-degree murder charge.
I know that you do not like to negotiate drug delivery cases, but Mr. Beasley has been in jail for approximately three or four months now. He did cooperate fully. He has stood ready to cooperate.
I cannot speak enough about what this man has done to cooperate. Like I said, his testimony did, in fact, lead to a conviction on a second-degree murder case just this week.
I believe that Mr. Blau and I have worked out an arrangement where if the Court would accept the negotiation that you would continue him on probation, he would plead to the new charges and run it concurrent with the probation he is already on.
I know you don't like to really negotiate drug deliveries, but due to his outstanding cooperation in this murder case, I feel that the Court should act as I have recommended.
After a plea bargain was made between the appellant and the state and accepted by the court, the court imposed exactly the sentence requested by the prosecutor. The court ultimately withheld adjudication, sentenced Beasley to probation on the new charge, and continued Beasley's previous probation.
In a criminal trial the defendant has the absolute right to fully cross-examine adverse witnesses to discredit them by showing bias, prejudice, interest, or possible ulterior motive for testifying. This is particularly so where a key witness is being examined. Davis v. Alaska, 415 U.S. 308, *268 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Steinhorst v. State, 412 So.2d 332 (Fla. 1982); Hannah v. State, 432 So.2d 631 (Fla. 3d DCA 1983); Kelly v. State, 425 So.2d 81 (Fla. 2d DCA 1982), petition for rev. denied, 434 So.2d 889 (Fla. 1983); Mendez v. State, 412 So.2d 965 (Fla. 2d DCA 1982).
Impeachment of a key state witness concerning the fact that he is awaiting sentencing for some offense and might have an expectation of leniency in that case or that he is on probation and has a desire to testify so as to please the authorities who have some discretion over his probationary status, is permissible for the purpose of demonstrating the witness's bias or motive for testifying for any reason other than to tell the truth. Garey v. State, 432 So.2d 796 (Fla. 4th DCA 1983); Hannah; Moreno v. State, 418 So.2d 1223 (Fla. 3d DCA 1982); Daniels v. State, 374 So.2d 1166 (Fla. 2d DCA 1979); Cowheard v. State, 365 So.2d 191 (Fla. 3d DCA 1978), cert. denied, 374 So.2d 101 (Fla. 1979). Denial of effective cross-examination in such circumstances constitutes constitutional error requiring reversal unless the error is harmless beyond a reasonable doubt. Davis; Steinhorst; Garey; Hannah; Kelly; Moreno; Russo v. State, 418 So.2d 483 (Fla. 2d DCA 1982); Mendez; Engram v. State, 405 So.2d 428 (Fla. 1st DCA 1981), petition for rev. denied, 417 So.2d 328 (Fla. 1982); Daniels.
In the case before us, the trial court erred in restricting the appellant's cross-examination of both Ruebin and Beasley. However, a review of the record leads us to conclude that the error concerning Ruebin was harmless beyond a reasonable doubt. Although Ruebin was placed on probation for a charge arising after the murder incident, there was neither a probation revocation hearing nor new charges pending against him when he testified at trial. Thus he had no compelling self-interest or "motive to testify so as to please authorities who have some discretion over his status." Daniels at 1167. Omission of any evidence relating directly to his credibility insofar as it related to his status was not prejudicial to the appellant.
On the other hand, we find that it was not harmless error to limit appellant's cross-examination of Beasley. Beasley was the key prosecution witness and his credibility in presenting the story of how the shooting occurred was crucial to the prosecution's case. Only he could identify the appellant as the person who was conversing with the victim behind the building and pointing a gun at the victim moments before shots were heard. Beasley was granted leniency and continued probation because of his cooperation in the case at bar. When the appellant was denied the opportunity to explore those matters on cross-examination, he was denied rights guaranteed to him by the Sixth Amendment. He should have been given the opportunity to question Beasley about his probationary status as well as the pendency of both a new felony charge and the revocation hearing in an attempt to demonstrate that Beasley's testimony in appellant's case was calculated to affect those proceedings. Kelly; Russo; Mendez; Moreno; Daniels. Given Beasley's central position in the appellant's case, a different result might have been obtained had the jury been able to hear all of the testimony relevant to Beasley's credibility and possible motive for testifying.
Accordingly, the judgment is REVERSED and the cause is REMANDED for a new trial.
SCHOONOVER and LEHAN, JJ., concur.