531 So.2d 1377 (1988)
Charles W. LUSK, Appellant,
v.
STATE of Florida, Appellee.
No. 86-2985.
District Court of Appeal of Florida, Second District.
September 30, 1988.
*1378 James Marion Moorman, Public Defender, and Laura Griffin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
Lusk appeals his judgments and sentences for burglary, aggravated battery, false imprisonment, and petit theft. We agree there was error and reverse.
At Lusk's trial, the alleged victim, William Pancoast, offered the following testimony. *1379 Three days prior to the day of these asserted offenses by Lusk, Pancoast observed Lusk near Pancoast's trailer during the time that circuit breakers were being switched on and off causing the lights inside the trailer to be extinguished three or four times repeatedly. Later that day, Pancoast found that his pickup truck had four flat tires.
At about midnight on the day resulting in the present charges, Pancoast walked through the front door of his mobile home carrying a loaded gun supposedly for protection. According to Pancoast, as he stepped inside the trailer, Lusk pounced on Pancoast forcing him out of the trailer. Once in the front yard, both men struggled for the gun. Pancoast was able to fire the gun, causing the bullet to strike the ground. Pancoast testified that Lusk had stated he (Lusk) had a knife, but Pancoast never saw a knife. During the course of the struggle, Lusk bit Pancoast's ear. At this point, Lusk and Pancoast mutually agreed to discard the gun and talk. Lusk invited himself into Pancoast's mobile home where they sat at a table and talked for several hours while drinking. Pancoast claims that Lusk struck and kicked him several times during this conversation until he finally pushed Lusk and ran to a neighbor's house where he called the police. When he returned to the trailer, Pancoast found that his watch and keys were missing.
While testifying, Pancoast stated he did not fight back because he was not that type of person, and it was not in his nature to fight with anyone. When the defense attempted to elicit from Pancoast on cross-examination the fact that he had committed prior acts of violence against his ex-wife, which acts were substantiated by police reports, the trial court excluded the evidence once more[1] holding that it was immaterial and irrelevant unless the other incidents occurred under circumstances similar to those present in this case.
Defense counsel further sought to impeach Pancoast by showing that Pancoast was on probation for committing a battery on the person of Connie Mallette by ransacking her place of residence and striking her on the head with a telephone. The defense proffered the testimonies of Deputy Gonzalez, who investigated the Mallette battery, and Connie Mallette to establish the battery incident on Mallette. The defense unsuccessfully argued that the fact that Pancoast had a battery charge pending against him during the trial of this case was admissible to show a possible motive for Pancoast not to be truthful. The trial court excluded this attempt at cross-examination ruling that it constituted impeachment on a collateral matter for the reason that the evidence was not relevant to show Pancoast's tendency to be violent with another six-foot individual such as Lusk.
At the close of the state's case and outside the jury's presence, the court called Pancoast as a court witness. In response to the trial court's questions, Pancoast testified he was not on probation at the time of the incident with Lusk, but that at the time of the trial he had been on probation for a period of one month after he pled no contest for the battery on Mallette.
Lusk admitted going to Pancoast's home on the night of the shooting incident to discuss Pancoast's beating of his ex-wife which had occurred a week earlier. Lusk testified that he had observed bruises and cuts on Pancoast's ex-wife the day of the beating and also was aware of another incident involving Pancoast striking a woman, not his ex-wife, on the head with a telephone.
Lusk's version of events was that as he was walking away from Pancoast's mobile home after knocking on the door, Pancoast arrived armed with an automatic pistol which he pointed at Lusk. Lusk stated that he jumped Pancoast to disarm him, and during a struggle in which Lusk eventually got the gun away from Pancoast, Lusk bit Pancoast's ear in an effort to distract Pancoast from shooting Lusk. In that exchange the gun fired but the bullet entered the ground. Lusk discarded the *1380 gun, and they proceeded inside the trailer for a drink, which according to Lusk was Pancoast's suggestion. Lusk related another confrontation between the two men which took place inside the trailer in which Pancoast pushed Lusk against the bathroom door and Lusk responded by slapping Pancoast. Moments later, Pancoast pushed Lusk and ran out of the trailer. Lusk stated he left then because he believed Pancoast had gone to retrieve the gun.
At the jury charge conference which followed, the judge entered these rulings as a matter of law:
1. The defendant was a trespasser.
2. Pancoast did not use any unlawful force against the defendant by merely pointing a loaded pistol at defendant upon finding him outside or inside Pancoast's home about midnight.
3. In every claim of self-defense, there must of necessity be unlawful force by the victim against the defendant.
4. Thus, there was no evidence whatsoever, much less any evidence of a substantial character, going to the element of self-defense.
The court, over a defense objection, refused to give Lusk's requested written jury instruction on self-defense taken from the Florida Standard Jury Instruction on the justifiable use of deadly force. Instead, the court gave the following court-authored special jury instruction:
It is lawful for a property owner to enter his home with a loaded pistol. It is also lawful for a property owner to merely point a loaded pistol at anyone who is not authorized to be on his property late at night. Consequently, Charles William Lusk may not claim self-defense under any version of the facts involved in this case.
As support for that instruction, the judge cited Rounds v. State, 382 So.2d 775 (Fla. 3d DCA 1980), "for the sole proposition that evidence may not establish defense of self-defense as a matter of law." Defense's objections as to the court's rulings on these instructions were renewed once again at the close of all the evidence and later in a motion for new trial, all of which were denied.
First, Lusk argues and the state concedes there was error in the adjudication of guilt by Lusk on the burglary count. The court improperly instructed the jury only as to a third-degree burglary, i.e., burglary with intent to commit an assault, also listing the lesser included crime of trespass to a structure, and not first-degree burglary of a "dwelling" as charged in the information. The jury returned a verdict of guilty of burglary with intent to commit an assault. The judge orally adjudicated Lusk guilty of "[b]urglary with intent to commit assault under Count I of the Information," which charged a first-degree felony. The written judgment, however, adjudicated Lusk guilty of a second-degree felony under count I, the burglary count.
Under the authority of Williams v. State, 511 So.2d 1017 (Fla.2d DCA 1987), review denied, 519 So.2d 988 (Fla. 1987), the written judgment and sentence on the burglary count should be corrected to comport with the jury verdict as supported by the instructions, but since we find other error requiring reversal of Lusk's convictions, no such correction is necessary. We note, however, that because of the potential for exposure of the defendant to double jeopardy in a new trial of these charges, the state may seek and the court may instruct only on simple burglary under count I of the state's information and any lesser included offenses. See Redondo v. State, 380 So.2d 1107 (Fla.3d DCA 1981), rev'd on other grounds 403 So.2d 954 (Fla. 1981) (citing Greene v. City of Gulfport, 103 So.2d 115 (Fla. 1958).
Next Lusk contends that the court erred both in denying the defense request for a standard self-defense instruction and then giving a court-authored special instruction on that issue instead. We agree with Lusk that the court's instruction to the effect that a property owner may point a loaded pistol at a person not authorized to be on his property at night, i.e., a trespasser, was error. See Butler v. State, 493 So.2d 451 (Fla. 1986). Not only was that instruction an incorrect statement *1381 of the law, see Butler, but it improperly presupposed, as stated in the trial court's findings, that Lusk was a trespasser as a matter of law. Lusk's status as a trespasser was a question of fact for the jury since the testimony and evidence were strongly disputed on this point. In addition to the contradictory testimonies of Pancoast and Lusk, the record establishes that there was no physical evidence found of any intrusion into Pancoast's trailer. The trial court, therefore, erred in ruling Lusk was a trespasser as a matter of law. See Duke v. State, 137 Fla. 513, 188 So. 124 (1939).
In Butler, the supreme court held that a homeowner may use deadly force to protect himself or his dwelling only if there exists a reasonable belief that such force is necessary. Id. (citing Falco v. State, 407 So.2d 203 (Fla. 1981)). The evidence in this case does not establish, as a matter of law, that Pancoast's act of pointing a loaded pistol at Lusk was precipitated by Pancoast's reasonable belief that such an amount of force was necessary as a means of protection. Even accepting Pancoast's version of events which Lusk strongly contested, i.e., that Lusk jumped Pancoast as Pancoast entered the trailer and that Pancoast believed Lusk had a knife and that Lusk was responsible for the incident three days before involving the slashed tires and switching breakers, it does not support a ruling that, as a matter of law, Pancoast's belief was reasonable that he needed a loaded pistol to defend against Lusk. The questions of "reasonable belief" and the "amount of force necessary" were factual determinations to be made by the jury after a proper instruction. See Brown v. State, 454 So.2d 596 (Fla. 5th DCA 1984), review denied, 461 So.2d 116 (Fla. 1984) (once the defendant has gone forward with evidence of self-defense, the state has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense.)
The court-authored instruction was furthermore an incorrect statement of the no-duty-to-retreat rule concerning homeowners since the instruction did not require use of force against Pancoast from which Pancoast had no duty to retreat but instead, as worded, permitted Pancoast to act as the initial aggressor allowing the use of deadly force against a purported trespasser (Lusk) without requiring any provocation. See Butler. The improper instruction here is more egregious than that in Butler since in that case it was accompanied by the defendant's requested instruction on self-defense, which here was not permitted by the trial court. This latter ruling was also erroneous. See Vazquez v. State, 518 So.2d 1348 (Fla. 4th DCA 1987) (failure to give a requested self-defense instruction was fundamental error where the evidence warranted the instruction).
If there is any evidence to support a particular defense, an instruction on that defense should be given to the jury. Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983). We conclude there was enough evidence in this case to allow the issue to be submitted to the jury upon a proper instruction. Smith. The evidence was contradictory as to who was the initial attacker, whether Lusk told Pancoast that he (Lusk) was armed with a knife and when that communication occurred, to what extent was the amount of force applied by Lusk necessary to disarm Pancoast, whether an additional struggle transpired inside the trailer, and what, if any, of the force attributable to Lusk he reasonably deemed necessary for his own defense. In spite of this conflict in the evidence, sufficient facts were established to support the giving of such an instruction and it was error to disallow Lusk's request in that respect.
The trial court's reliance on Rounds, 382 So.2d at 775, for disallowing the requested defense instruction is not persuasive. Rounds contains no recitation of the facts, but merely holds that the evidence was sufficient to sustain a conviction for manslaughter and did not establish the defense of self-defense or excusable homicide as a matter of law, thereby withstanding a defense motion for judgment of acquittal or new trial. Rounds rather is supportive of the conclusion which we reach in the present case. In Rounds, as here, the *1382 court declined to remove the issue of self-defense from the province of the jury by upholding the jury's conviction and refusing to grant the defendant's request for a ruling on the defense issue as a matter of law.
Lastly, we turn to the trial court's refusal to permit the impeachment of Pancoast concerning Pancoast's past violent behavior. The trial court's exclusion of that evidence on the ground that it was collateral and, thus, inadmissible was clear error. The state opened the door to the introduction of this impeachment evidence, which was necessary to contradict Pancoast's statements both on direct and cross-examination that he was basically a nonviolent person. Specifically, the defense sought to question Pancoast regarding previous assaults and beatings committed by Pancoast on his ex-wife as well as the battery incident involving Mallette. The defense further attempted to introduce extrinsic evidence to establish the above through the ex-wife's testimony, police reports of the incidents of abuse by Pancoast, and the testimonies of Mallette and Deputy Gonzalez.
This defensive evidence was clearly relevant to show Pancoast's lack of truthfulness regarding his violent nature and to contradict his direct statement to the contrary. Such contradictory evidence is admissible for purposes of impeachment. See Gelabert v. State, 407 So.2d 1007 (Fla. 5th DCA 1981); § 90.609, Fla. Stat. (1985). This evidence was also admissible as specific instances of conduct to show Pancoast's character for violence once that character trait was placed at issue, as well as Lusk's knowledge of that character trait and Lusk's state of mind in believing his actions were necessary to defend against Pancoast's actions. See § 90.404, Fla. Stat. (1985); Burk v. State, 497 So.2d 731 (Fla. 2d DCA 1986). See also Sanchez v. State, 445 So.2d 1, (Fla.3d DCA 1984). The excluded evidence of the battery for which Pancoast was on probation at time of trial was admissible on the additional ground that it tended to show Pancoast's possible bias in attempting to curry favor with the state through his testimony. See Watts v. State, 450 So.2d 265 (Fla.2d DCA 1984); § 90.608, Fla. Stat. (1985).
In summary, we find that the various cumulative errors of the trial court in this case demand that we reverse Lusk's convictions and sentences. We further remand the case for a new trial to be conducted in a manner that is consistent with the views expressed in this opinion.
Reversed and remanded for new trial.
SCHEB, A.C.J., and RYDER, J., concur.
NOTES
[1] Before the trial began, a state's motion in limine was granted by the trial court which prevented any evidence that Pancoast had beaten his ex-wife in the past.