820 So.2d 331 (2002)
Thomas GEFFKIN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-4034.
District Court of Appeal of Florida, Fourth District.
February 27, 2002.
*332 Carey Haughwout, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
TAYLOR, J.
We deny appellant's motion for rehearing, but substitute the following opinion in place of our previously issued per curiam opinion.
Appellant, Thomas Geffkin, was tried by jury on two counts of aggravated assault with a firearm. On the first count the jury found appellant guilty of the lesser included offense of improper exhibition of a firearm. On the second count the jury found appellant guilty of aggravated assault as charged. We reject appellant's argument on appeal that the state failed to prove a prima facie case of aggravated assault and that his conviction constitutes fundamental error. We affirm.
S.F. and G.S., the named victims in the aggravated assault counts, were eleven-year-old schoolchildren at the time of this incident. They both testified at trial. According to S.F., he and G.S. had returned home from school and were playing a game of hide-and-go-seek in their Hollywood neighborhood, along with four other friends. The version they played is called "Manhunt," wherein the players divide into two teams, with one team hiding and the other team seeking them before they return to home base. Home base was the telephone pole in front of S.F.'s house, at 2639 Grant Street, Hollywood. When they began playing, it was near dusk but still light outside.
Usually when the children played hide-and-go-seek, they used the entire street, including neighbors' yards. But, as a rule, they would not jump over fences or go past stop signs. Their play often extended to 26th Avenue, including the area of the two-story apartment complex located at 2621 Grant Street. Sometimes they used the apartment complex's parking lot, trees, and bushes as a hiding place. On this particular evening, S.F. and G.S. were passing by the side of the apartment building and looking inside the hallway to see if one of their playmates on the other team was there. By then it was dark outside, but the hallway was lit. Suddenly they saw a man in the hallway holding a gun in one hand and a flashlight in the other. The man, later identified as the appellant, was running toward them. The two boys split up and tried to run away. But appellant ordered them to stop and "get down, get down on the ground." S.F. complied. *333 When appellant ordered S.F. to get on his stomach, S.F. did so because "he had a gun." Appellant was standing between the two boys.
S.F. saw appellant approach G.S. and place the gun at his head. S.F. heard his friend say "no, no, don't shoot, don't shoot." When appellant turned around and headed back toward S.F., G.S. ran away. S.F. was still lying on the ground on his stomach. Appellant pressed the barrel of the gun against the side of S.F.'s back, leaving a mark on his back. S.F. testified that appellant had two guns in his hand and that his flashlight had fallen to the ground.
Appellant then ordered S.F. to stand up. When S.F. complied, appellant ordered him to "look into the barrel, look into the gun barrel." S.F. begged appellant not to shoot him. Appellant told S.F. he was giving him three seconds to run and not to come back on the property. S.F. ran straight home as fast as he could. He was so shocked and shaken that he was unable to open the unlocked door to his home without his mother's help. S.F.'s mother called the police.
G.S. also testified that appellant had a handgun and ordered the two boys to "get down on the ground." G.S. said appellant pointed the barrel of the gun at the center of his forehead. He testified that he was afraid and thought he was going to die.
Hollywood Police Officer David Smith testified that he was on road patrol when he was dispatched to S.F.'s home regarding an aggravated assault. According to the officer, the two boys were "[v]ery scared, ghostly, pale looking. They were stammering about ... talking real fast, very nervous, literally scared to death." The officer saw the marks on S.F.'s back and photographed them. He then went to apartment 8A on the first floor of the building. When appellant came to the door, Officer Smith explained that he was investigating a reported aggravated assault. Appellant responded, "you mean the incident with the boys in the back." Appellant told the officer he believed the two boys were vandalizing the rear of the building and he went outside to investigate with his flashlight and gun. He acknowledged that he quickly discovered that the boys did not possess any weapons or tools. With appellant's co-operation, the officer recovered a semi-automatic nine millimeter pistol from appellant, along with two other revolvers for safekeeping.
After the state rested, appellant did not move for a judgment of acquittal. Appellant testified in his own behalf. He said he was fifty-nine years old, single, and had lived in the condominium at 2621 Grant Street for thirty-three years. He was a retired army master sergeant and had served in the U.S. Army Special Forces branch. During his twenty-two years of service, including combat in Vietnam, he received numerous awards, including three Bronze stars. He stayed in a downstairs apartment of the twenty-unit, two-story apartment building.
On the day of the incident that led to these criminal charges, appellant had returned home from the beach around 5:30 p.m. He showered, ate, and lay down to take a nap. His bedroom window, which faces the back, was open to admit a breeze. He awoke to the sound of mumbling voices and footsteps and became concerned. When he looked out the back window, he could not see anything. He quickly pulled on his shorts, grabbed his flashlight, removed his pistol from its holster, and headed outside his apartment.
A hallway runs along the front of the building and at the end there are apartments owned by "snowbirds," who usually arrive later in the season. When he *334 reached the end of the hallway, he saw two figures silhouetted, one to his immediate left about a yard away and the other a little farther away. Because they were not standing straight up, he did not know they were small boys. He demanded to know what they were doing there and told them to put their hands up and to get down. He illuminated them with his flashlight, and after seeing that they were children and did not have a weapon or tool, asked what they were doing there. He ordered them to "get out of here right now." When one of the boys explained that they were playing hide-and-seek, he responded, "This is not the place to play hide and seek. You are trespassing." He also warned them that they "could get in all kinds of problems" and get hurt. He testified that the muzzle of his firearm was pointing toward the sky and that the cocking mechanism was in a non-firing position. He conceded that the gun was operable but denied ever pointing the weapon at either boy.
Appellant explained that there had been an attempted car theft across the street the previous year, and that there had been attempted break-ins in homes whose louvered windows had been smashed or pried. Also, there had been a break-in murder not far away and several residents in the area had been victims of burglaries and robberies. "No Trespassing" signs were posted at both ends of his condominium building, and only five of the twenty or more apartments in his complex were occupied at the time.
At the close of appellant's case, appellant did not move for a judgment of acquittal. The trial court gave standard jury instructions, including requested instructions on the lesser included offense of improper display of a firearm and on non-deadly use of force in self-defense. The jury returned verdicts of guilty to improper display of a firearm on Count I (victim G.S.) and aggravated assault with a firearm on Count II (victim S.F.). The trial court imposed the mandatory minimum sentence of three years in prison on the aggravated assault conviction.
On appeal, appellant challenges the legal sufficiency of the evidence. While appellant acknowledges that he did not make any motions below for judgment of acquittal, he maintains that his conviction on the second count constitutes fundamental error, because there is a lack of prima facie evidence to support the crime of aggravated assault with a deadly weapon.
Generally, challenges to the sufficiency of the evidence must be preserved by timely moving for a judgment of acquittal. See State v. Barber, 301 So.2d 7 (Fla. 1974). However, we have previously held that a criminal conviction is fundamentally erroneous when the facts affirmatively proven by the state do not constitute the charged offense as a matter of law. See Griffin v. State, 705 So.2d 572, 574 (Fla. 4th DCA 1998); see also Slydell v. State, 792 So.2d 667, 670-71 (Fla. 4th DCA 2001).
A conviction for aggravated assault with a firearm requires proof that appellant "intentionally and unlawfully threatened, either by word or act, to do violence to the victim." §§ 784.011, 784.021, Fla. Stat. (1999). Appellant's main argument is that the state failed to prove the essential element of "unlawfulness" in his use of a firearm. He asserts that a homeowner has a right to remove trespassers from his property and the right to possess a firearm in the curtilage of his home to ascertain the identity of trespassers at night when the circumstances reveal doubt as to whether they pose a potential danger to the residents or the property. As authority, appellant cites Lusk v. State, 531 So.2d 1377 (Fla. 2d DCA 1988). However, in Lusk, the second district simply acknowledged that a homeowner can use deadly *335 force to protect himself or his dwelling when there exists a reasonable belief that such force is necessary. The court went on to emphasize that the questions of reasonable belief and amount of force necessary for protection are questions for the jury. Id. at 1381.
In this case, appellant presented a defense of self-defense. He received the standard jury instruction on the non-deadly use of force to defend one's person or property. However, contrary to appellant's contention, he did not establish this defense "as a matter of law" such that he was entitled to an acquittal. A court should grant a motion for judgment of acquittal only when "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." DeAngelo v. State, 616 So.2d 440, 442 (Fla.1993); see also Lynch v. State, 293 So.2d 44 (Fla. 1974). Where there are different opinions or inferences to be drawn, the trial court should submit the case to the jury. Minnis v. State, 645 So.2d 160 (Fla. 4th DCA 1994). A reviewing court must view the evidence and all reasonable inference in the light most favorable to the state, the non-moving party. Behn v. State, 621 So.2d 534, 535 (Fla. 1st DCA 1993).
In Sneed v. State, 580 So.2d 169, 170 (Fla. 4th DCA 1991), we held that the state's evidence must rebut a defendant's allegation and evidence of self-defense. If the state fails to disprove, beyond a reasonable doubt, that the defendant did not act in self-defense, the trial court is duty bound to grant a judgment of acquittal in favor of the defendant. See Brown v. State, 454 So.2d 596, 599 (Fla. 5th DCA), rev. denied, 461 So.2d 116 (Fla.1984).
In this case, appellant contends that he presented sufficient proof that he acted in self-defense and is therefore entitled to an acquittal in his favor. However, the state produced substantial competent evidence sufficient to rebut appellant's testimony of self-defense. After considering the conflicting evidence and the demeanor of the witnesses, a reasonable jury could reject appellant's defense. The state's evidence contradicted appellant's characterization of the victims' conduct as a trespass to his home and cast doubt on the reasonableness of appellant's belief that the use of force was necessary to defend himself against the threat of imminent harm or danger. As the state points out, this incident occurred outside appellant's dwelling in a common area of an apartment complex. There was no evidence that the youths entered or attempted to enter appellant's dwelling or curtilage. In addition, the eleven-year old victims weighed seventy-five and eighty-five pounds respectively and did not have any weapons or tools in their possession.[1] Thus, questions of reasonable belief and amount of force necessary for protection were questions for the jury. See Wilson v. State, 707 So.2d 1200 (Fla. 4th DCA 1998)(holding that defendant convicted of manslaughter of victim within the curtilage of the defendant's home was not entitled to a judgment of acquittal because a jury question was presented on his self-defense defense, i.e., whether he reasonably feared for his own safety or that of his roommate).[2]
*336 In sum, resolution of the factual issues herein was entirely within the province of the jury. No fundamental error occurred; appellant was not convicted of a crime that did not happen. And even if appellant's claim had been properly preserved by timely motions for judgment of acquittal, we would still find that there was competent substantial evidence to support the guilty verdict on aggravated assault with a firearm as charged.
AFFIRMED.
POLEN, C.J., and GROSS, J. concur.
NOTES
[1] Part of the instructions on the justifiable use of non-deadly force reads: "In considering the issue of self-defense, you may take into account the relative physical abilities and capabilities of the defendant and the victim." Fla. Std. Jury Instr. (Crim.) 3.04(e).
[2] While we do not conclude that this is as close a case as Wilson, we are nonetheless not unsympathetic to appellant's position, given his background, the circumstances surrounding this incident, and the mandatory prison term imposed.