VILLANTI, Judge.
Steven John Hansen appeals his final judgment and sentence for aggravated battery with use of a deadly weapon, witness tampering, and violation of an injunction for protection against domestic violence. Although Hansen raises several issues on appeal, we find that only one warrants discussion — the trial court’s modified jury instruction. For reasons discussed below, we reverse for a new trial on only the aggravated battery and witness tampering charges.
Steven Hansen and Staryn Henshaw had a brief but rocky relationship from June 2002 until February 2003, when Hen-shaw sought and obtained a domestic violence injunction against Hansen for one year. Despite obtaining the injunction, Henshaw continued repeatedly seeing and calling Hansen. Hansen admittedly saw Henshaw on almost a daily basis and called her 270 times in an eighteen-day period during the month of February. Neither party sought to modify the injunction to allow contact.
On February 25, 2003, Hansen visited Henshaw’s home in the early evening hours. The rest of the facts are wildly disputed. Henshaw testified that Hansen banged on the locked door to her home and said, “I want to come in. Can I come in?” Henshaw said no, telling Hansen that if he did not leave, she would call the police. Hansen then “busted in the door ... by kicking it.” Henshaw angrily asked and then begged Hansen to leave. He refused, saying, “I could stay here. I have a right to be here. I’m not going anywhere. Make me leave.” Then Hen-shaw “tried to coax [Hansen] out of the house” by “put[ting her] hands on his shoulders and tr[ying] to generally ease him out the door.” Hansen pushed her back angrily. Henshaw went to a back bedroom and waited for Hansen to leave. Instead of leaving, Hansen followed her. Henshaw tried to call the police, but Hansen grabbed the phone and smashed it against the wall. Then, there was a shoving match during which Hansen lifted Henshaw off the ground, pinned her down, sprayed beer on her, and hit her on the head with a beer bottle.
In stark contrast to Henshaw’s testimony, Hansen testified that he was an invited guest in the home. He knocked on the door, and Henshaw told him to come in. Hansen opened the unlocked door and began talking to Henshaw. Eventually, they began arguing. As Hansen gathered his belongings, Henshaw started pushing him. Initially, he tried to keep her at bay. As *203 they continued arguing, Hansen asked Henshaw a question that enraged her. She then began repeatedly punching Hansen with a closed fist. Hansen backed away with his hands down at his side. She continued hitting him .four or five times, and he finally slapped her to defend himself. Hansen headed toward the door, and Henshaw grabbed him by the ponytail. She also bit him on the arm. Hansen admitted spraying Henshaw with beer but denied ever hitting her with the beer bottle. According to Hansen, Henshaw never mentioned calling the police.
Hansen’s theory of defense was that his slapping Henshaw was justifiable use of force in self-defense. The trial court correctly instructed the jury on self-defense. The dispute here centers around the trial court’s additional jury instruction on the justifiable use of force in one’s home. Fla. Std. Jury Instr. (Crim.) 3.04(d);[1] Because the battery occurred in the victim’s (Hen-shaw’s) home, the trial court gave a modified form of the instruction by changing the word “defendant” to “person.”[2] The court instructed:
A person has no duty to retreat when faced with the wrongful entry to his or her home by another person. In that situation, a person has the right to defend his or her home, property, and himself or herself with a reasonable force including force not likely to cause death or great bodily harm.
Counsel for Hansen objected to the instruction, citing Butler v. State, 493 So.2d 451 (Fla.1986), and arguing that Henshaw was not on trial and was thus not entitled to an instruction on her right to use force.
In Butler, 493 So.2d 451, the defendant shot the victim in the victim’s home. At. trial, the defendant claimed “self-defense.” As in . our-. case, the trial court gave a modified version of instruction 3.04(d), substituting the word “person” for the word “defendant.”- On appeal, the Florida Supreme Court held that the disputed instruction was error and explained:
The instruction on justifiable use of force in one’s own home was misleading and contradictory.... [T]he improper, instruction would naturally lead a reasonable jury to conclude that the victim had. an abstract right to be armed and use force against the defendant. The instruction improperly shifted the focus of the case, from the applicability of the defense of self-defense to the right of the victim to fight force with force. As a result, the confusing and misleading instruction virtually negated the defendant’s only defense, that of self-defense.
Id. at 453; see also Lusk v. State, 531 So.2d 1377 (Fla. 2d DCA 1988); Desouza v. State, 650 So.2d 170 (Fla. 4th DCA 1995).
The same reasoning applies here. The trial court’s modified instruction shifted the focus of the case from the defendant to the victim and-her- right to use force. The instruction also implied that Henshaw was “faced with the wrongful entry to [her] home” by Hansen, a fact that was disputed at trial and critical to the jury’s determination of whether Henshaw was the initial aggressor and whether Hansen was therefore justified in using force to defend himself. Giving the modified instruction in Butler was particularly egregious because the victim denied attempting to use any force; the court’s instruction did not relate *204 to the evidence received at trial. See Butler, 493 So.2d at 452. Here, Henshaw admitted “put[ting her] hands' on [Hansen’s] shoulders and tr[ying] to generally ease him out the door.” Nevertheless, the court’s instruction still improperly shifted the focus of the case and “virtually negated the defendant’s only defense, that of self-defense.” Id. at 453.
' Additionally, the modified instruction was confusing. Typically, a duty-to-retreat instruction is given only
when justifiable use of deadly force is involved ... because the standard jury instruction'for justifiable use of deadly force states in part that deadly force cannot be justified unless a defendant used “every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to that force” ... [and] “to the lay mind this well could be construed to mean a duty to run or get out of the way.”
Morris v. State, 715 So.2d 1177, 1179 (Fla. 4th DCA 1998) (citing Hedges v. State, 172 So.2d 824, 827 (Fla.1965)) (emphasis added). Here, only nondeadly force was at issue. The standard instruction for justification of nondeadly force does not use the same language that might imply a duty to retreat. Thus, the court’s instruction was unnecessary and simply muddled the issues. See Butler, 493 So.2d at 452 (noting that “the court should not give instructions which are confusing”).
The court’s erroneous instruction was not harmless because there is a reasonable possibility that it contributed to Hansen’s convictions for aggravated battery and witness tampering. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Butler, 493 So.2d 451. The instruction did not apply to the domestic violence injunction violation offense to which Hansen admitted at trial. Thus, we affirm Hansen’s judgment and sentence as to the injunction violation offense. We reverse and remand for a new trial on the aggravated battery and witness tampering charges.[3]
Affirmed in part, reversed in part, and remanded.
SILBERMAN and KELLY, 33., Concur.

. Renumbered as Florida Standard Jury Instruction (Criminal) 3.6(f).

. Florida Standard Jury Instruction 3.04(d) states: "If the defendant was attacked in [his] own home, or .on [his] own premises, [he] had no ;duty to retreat....” (Emphasis added.)

. Hansen also suggests that his sentence is improper based on Blakely v. Washington, —- U.S. -, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, because we are remanding the matter to the trial court for a new trial, it would be premature to attempt to determine whether the Blakely limits apply.