GRIFFIN, J.
Appellant, Colin D. Mann [“Mann”], appeals his conviction for attempted second degree murder with a weapon and aggravated battery with a deadly weapon. On appeal, Mann argues that the trial court erred by (1) instructing the jury on the victim’s right to use non-deadly force in defense of his property, and (2) denying his motion for judgment of acquittal.
On the morning of May 28, 2011, Mann stabbed Travis Wills [“Wills”] three times with a knife. According to Wills’s testimony at trial, Wills was drinking coffee on his front porch at about 5:00 in the morning when he saw a man (later identified as Mann) walking down the sidewalk. Mann stopped midway on the sidewalk and attempted to call Wills’s wife’s cat. When the cat did not respond to Mann’s call, Wills testified that Mann “continued down the sidewalk and got to my neighbor’s driveway which he then turned, walked down my neighbor’s driveway and then turned again left on to my property which put him in front of me in the front porch.” Wills continued, “At that point the cat— the cat is rather friendly at that point. He didn’t really think anything of it and approached [Mann].” “At that point, [Mann] hammer fisted the cat in the back of the head and pinned it to the ground.” According to his testimony, Wills “immediately responded with physical confrontation” by leaving the porch, yelling “hey,” and punching Mann in the face. Wills testified: ‘We fought. I assumed we were in a fistfight, but I had no idea I was being stabbed. We fought out to the sidewalk; and at that point he stabbed me again and I realized I had been stabbed.” Eventually, Wills fell to the ground in his front yard. According to Wills, Mann then “showed me the knife and told me he would kill me.” Wills then “made a diagonal” to his front porch, and Mann left the scene.
Mann’s testimony at trial recalled a somewhat different scenario. At the time of the incident, Mann had been homeless for about six to eight months. Mann testified as follows:
I was headed down towards Eola Park in the morning, at approximately 5:30 in the morning; and as I went by a house, there was two cats that had come running out meowing at me like saying hello, or whatever, and I had stopped to pet them .... They had come up right by the sidewalk. I had taken a sidestep off into a driveway, and I had squatted down, and I had petted one on its back; and then I had reached over and petted the other one. It had flopped over on his back, and I went to rub its belly because I thought that’s what it was doing; and as soon as I touched its belly, it sort of nipped at my hand and wrapped his paws around it and I had jerked my hand up .... It startled me.
The following direct examination ensued:
Q. Did you hit the cat?
A. Not at all. When I jerked my hand up, the cat that was laying on the ground that I attempted to rub its belly had jumped back up and ran *452 away and then the other one followed it.
Q. Okay. What happened after that?
A. I thought to myself, like, silly cats, and stood back up. I got back on the sidewalk in the same direction I was heading down toward Eola Park and started walking away from the corner of the driveway there.
Q. Okay. At some point did you see Mr. Wills?
A. Not specifically. I had walked about 40 feet down to about the middle of the neighbor’s yard, and at that time I heard something crash through the bushes. I thought maybe it was the cats that had done that; but immediately after hearing something coming through the bushes, I heard somebody take a few steps behind me, and I was immediately hit in the back of the head with what felt like a baseball bat.
Q. Okay. After you were hit, what happened?
A. I was — due to the force of the blow, I was knocked down to my knees and my hands, and I had fell to the sidewalk and scraped my hands up a little bit; and then I still didn’t know what was going on. I had attempted to stand back up. I got about halfway standing back up and this person that I now recognize as Mr. Wills was in front of me directly. He at that time reached forward with his left hand and grabbed me by the left shoulder strap of my backpack.
Q. Okay. Did he strike you again?
A. I was — I was still attempting to stand up, and he had in his right hand a very large travel [coffee] mug. I don’t know exactly how large, but it was at least eight to ten-inches tall and maybe about that (demonstrating) in diameter. He at that time punched forward with it and the rim hit me directly in my left eye and splashed coffee into my eyes and my face. It had a very strong vanilla smell to it.
Q. Okay. Let me back up and ask, did you have a knife with you on this day?
A. I did have a paring knife I kept in my pocket that I used from time to time for various things.
Q. Why did you have a knife?
A. Food preparation. And also with me being homeless, I’ve run into some situations where I felt safer just having one. I’ve never had occasion to use it though.
Q. Okay. After you were punched in the eye, what happened at that point?
A. Well, at that time I was still — I had finally managed to get straightened up where he was still trying to pull me like he seen me try to pull me back down. There was two or three times that he had attempted to smash me in the face again with the coffee mug, and I had deflected it with my left hand. At that time I thought I was being mugged or possibly something worse. I didn’t know what was happening.
For that reason, Mann testified, he stabbed Wills several times. Mann testified that he left the scene and continued to walk towards Eola Park because he believed that Wills would return with his gun.
At the close of evidence, the State requested that the trial court instruct the jury on Wills’s justifiable use of non-deadly force to protect his wife’s cat. Over *453 Mann’s objection, the trial court acquiesced and included the following modified instruction, in addition to the jury instructions on Mann’s claim of self-defense:
DEFENSE OF PROPERTY. At issue in this case is whether a person may act in defense of property. “Non-deadly” force means force not likely to cause death or great bodily harm. Travis Wills would be justified in using non-deadly force against Colin Mann if the following three facts are proved: (1) Colin Mann must have been trespassing or otherwise wrongfully interfering with personal property. (2) The personal property must have lawfully been in Travis Will’s possession, or in the possession of a member of his immediate family or household, or in the possession of some person whose property he was under a legal duty to protect. (3) Travis Wills must have reasonably believed that his use of force was necessary to prevent or terminate Colin Mann’s wrongful behavior. A person does not have a duty to retreat if the person is in a place where he has a right to be.
An affirmative defense that arises out of section 776.031, Florida Statutes, concerns a defendant’s justifiable use of non-deadly force. Accordingly, this particular instruction included by the trial court was modified to replace the word “defendant” with Wills (the victim) and the word “victim” with Mann (the defendant). Ultimately, the jury found Mann guilty of attempted second degree murder (with the use of a weapon) and aggravated battery. The trial court sentenced Mann to twenty years for the charge of attempted second degree murder and fifteen years for the charge of aggravated battery, to be served concurrently.
Generally, a trial court’s decision to give or withhold a proposed jury instruction is reviewed for an abuse of discretion. Vila v. State, 74 So.3d 1110 (Fla. 5th DCA 2011). “However, in a criminal proceeding, the trial court’s discretion is narrower because a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support the theory and the theory is recognized as valid under Florida law.” Id. For this reason, “[mjodifications to the standard jury instructions on the issue of self defense which are misleading, confusing, or misstate the law may result in reversible error.” Byrd v. State, 858 So.2d 343 (Fla. 1st DCA 2003).
In Butler v. State, 493 So.2d 451 (Fla.1986), the Florida Supreme Court considered whether the trial court’s decision to give a similar modified jury instruction constituted reversible error. In that case, the defendant, who was charged with attempted first-degree murder, claimed that the shooting was a justifiable use of force in self-defense. Id. at 452. Although the trial court had correctly instructed the jury on the defendant’s claim of self-defense, the trial court had included an additional jury instruction on the justifiable use of force in one’s own home. Id. But “since the shooting occurred in the victim’s home as opposed to the defendant’s home, the trial judge gave a modified form of the instruction by changing the word defendant to person.” Id. Thus, the jury was instructed:
If a person is attacked in his own home or on his own premises, he has no duty to retreat and has a lawful right to stand his ground and meet force with force, even to the extent of using force likely to cause death or great bodily harm if it was necessary to prevent death or great bodily harm to himself or another.
Id. (emphasis added).
On appeal, the Florida Supreme Court held that the trial court erred by giving *454 this additional, modified instruction for two reasons: (1) the instruction was unrelated to the evidence adduced at trial, and (2) the instruction was misleading and contradictory. Id. at 452-53. The court first held that the instruction was unrelated to the evidence adduced at trial because the instruction applied to the victim’s right to use force in his home.
Second, the court held that the instruction was misleading and contradictory. Id. at 453. Whereas the instruction told the jury that the victim had the right to meet force with force in his own home, the court noted that a person only has such right if he or she reasonably believes such force is necessary to protect his person or dwelling. Id. The reasonableness of such belief (if the victim were, in fact, armed) was not litigated because the victim denied carrying a gun.
Thus, the improper instruction would naturally lead a reasonable jury to conclude that the victim had an abstract right to be armed and use force against the defendant. The instruction improperly shifted the focus of the case from the applicability of the defense of self-defense to the right of the victim to fight force with force. As a result, the confusing and misleading instruction virtually negated the defendant’s only defense, that of self-defense.
Id. Finally, the court held that “[t]he extremely misleading and confusing jury instruction that did not pertain to any evidence presented at trial did not constitute harmless error because there exists a reasonable possibility that it contributed to the conviction.” Id. Moreover, the prosecutor repeatedly told the jury that even if the defendant’s testimony was true, he should still be convicted because the victim had a right to be armed and consequently the defendant had no right to claim self-defense. Id.
Citing to Butler, the First District in Mason v. State, 584 So.2d 165 (Fla. 1st DCA 1991), reversed the defendant’s conviction for aggravated battery as a result of the trial court’s decision to instruct the jury on the victim’s lack of duty to retreat. In Mason, the charge of aggravated battery arose out of an altercation between the defendant and the victim that occurred in the victim’s front yard. The trial court properly instructed the jury on the defendant’s claim of self-defense but, as requested by the State, also gave a modified jury instruction on the victim’s lack of duty to retreat if attacked in his own home. On appeal, the court held that the modified jury instruction “was irrelevant because [the victim] was not charged with any offense, and whether or not he acted in self-defense was not at issue.” Id. at 167. The court continued:
As in Butler ... the modified instruction was misleading and confusing since it tended to shift the focus away from the issue of whether the defendant was justified in the use of force, and to place emphasis on whether the victim was justified in defending himself — a question which was not at issue in this case.

Id.

A trial court’s similar decision to instruct the jury on the victim’s lack of duty to retreat was rejected by the Fourth District in Desouza v. State, 650 So.2d 170 (Fla. 4th DCA 1995). In Desouza, the defendant was charged with attempted first degree murder in the stabbing of two victims, which occurred in the victims’ apartment during a dispute over the repayment of a loan. The defendant had argued that the stabbings were done in self-defense, and the trial court instructed the jury on the victims’ lack of duty to retreat. Citing to Butler, the Desouza court held that the court’s substitution of the word “victim” for the word “defen *455 dant” was an incorrect statement of the law and may have confused the jury. Id. at 171.
Similarly, in Hansen v. State, 898 So.2d 201 (Fla. 2d DCA 2005), the Third District reversed a defendant’s conviction for aggravated battery because the trial court charged the jury with a modified jury instruction on the victim’s lack of duty to retreat. Again, citing to Butler, the Hansen court held: “The trial court’s modified instruction shifted the focus of the case from the defendant to the victim and her right to use force.” Id. at 203. Moreover, the court was concerned that “[t]he instruction also implied that [the victim] was ‘faced with the wrongful entry to [her] home’ by [the defendant], a fact that was disputed at trial and critical to the jury’s determination of whether [the victim] was the initial aggressor and whether [the defendant] was therefore justified in using force to defend himself.” Id. By improperly shifting the focus of the case, the instruction “virtually negated the defendant’s only defense, that of self-defense.” Id. at 204 (citing Butler, 493 So.2d at 453). The court held that the trial court’s erroneous instruction was not harmless because there was a reasonable possibility that it contributed to the defendant’s convictions. Id.
Finally, in Byrd, 858 So.2d at 343, the First District reversed a defendant’s conviction for manslaughter because the trial court’s modification to the standard jury instruction on self-defense improperly shifted the jury’s attention from whether the defendant’s behavior provoked the incident to whether someone else may have been the initial cause of the use of deadly force. The Byrd court was concerned that “[t]he instruction, as read, could be reasonably understood to mean [defendant] was not entitled to assert self defense based upon the actions of one of his friends.” Id. at 344. Since the law did not preclude the defendant’s claim of self-defense based on another person’s alleged provocation, where the two were not acting in concert, the modification constituted reversible error. Id.
Here, Mann sought to establish that he was justified in his use of deadly force against Wills because he believed that he was being mugged and therefore feared for his life. As in the foregoing cases, the trial court correctly instructed the jury on Mann’s assertion of self-defense. Specifically, the trial court instructed the jury that Mann’s use of deadly force was justifiable only if Mann reasonably believed that the force was necessary to prevent imminent or great bodily harm to himself. In addition, the trial court instructed the jury that Mann’s use of deadly force was not justifiable if he initially provoked the use of force against him. However, at the State’s request, the trial court also included an additional instruction regarding Wills’s justification for using non-deadly force against Mann.
As in Butler, this modified instruction improperly shifted the focus of the case from the applicability of Mann’s claim of self-defense to Wills’s right to use non-deadly force to protect his wife’s cat. As the First District stated in Mason, because Wills was not charged with any offense, his right to act in defense of his wife’s cat is irrelevant. Although the State was understandably worried that the defense would focus on the fact that Wills attacked Mann first, such a focus is relevant and permitted because the disputed issue in this case was Mann’s reasonable belief that the use of deadly force was necessary to protect himself. Moreover, the State’s concern was properly addressed by the instruction that (1) Mann’s use of deadly force was not justified if he was the one who provoked Wills’s force in the first *456 place, and (2) Mann’s use of deadly force was not justified if he had been committing animal cruelty on the cat. The additional jury charge regarding whether Wills was justified in his initial use of force against Mann improperly creates a presumption of provocation. Thus, as in Butler, the improper instruction might lead a reasonable jury to conclude that Wills’s right to use non-deadly force precluded Mann’s right to use deadly force. As in the earlier cited cases, we cannot say beyond a reasonable doubt that the modified instruction was harmless error. Appellant is entitled to a new trial.
REVERSED and REMANDED.
EVANDER and COHEN, JJ., concur.