DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EVANDER STICKNEY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-1803

[ February 14, 2018 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Geoffrey D. Cohen, Judge; L.T. Case No. 15-008040 CF10A.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Evander Stickney appeals his conviction and sentence for felony battery. He argues that the trial court improperly instructed the jury on the victim's right to use force. We agree and reverse for a new trial. On the remaining issues raised by appellant, we find no error.

*The Information*

Appellant was charged by information with aggravated battery and culpable negligence, arising out of a fight he had with his former girlfriend, Marika Ellis.

*The Prosecution's Case*

At trial, Ellis testified that she and appellant had a two-year old daughter together. Ellis and appellant broke up in April 2015, but they continued to see each other often.

A few days before the incident that led to the criminal charges against appellant, Ellis learned that a woman whom appellant was seeing was pregnant.

On the day of the incident, appellant wanted Ellis to come over so he could explain to her what was going on with the other woman. Ellis arrived at appellant's house shortly before noon and went to appellant's bedroom. Ellis brought their daughter with her. Appellant's aunt, cousin, and grandmother were also in the house.

While appellant and Ellis were talking, appellant received a text message from the other woman. Appellant got upset and threw his phone.

Ellis left to go to the store but eventually returned. Appellant was lying down in his bedroom and appeared to have been crying. Ellis sat on the bed and put their daughter near appellant, hoping to brighten his spirits. Appellant instead got upset and "kind of pushed back" towards their daughter. Ellis was able to grab her and intercept any contact.

Ellis then got up and said she was "getting the hell out of there." Appellant responded, "[T]hen get the fuck out." Appellant got up and was angry. He and Ellis started yelling at each other. Appellant's aunt and cousin came into the room.

As Ellis tried to walk around appellant to leave, she grabbed some cereal that was on the dresser so that she would have some food on hand in case her daughter got hungry. Appellant grabbed Ellis's hand, she let go of the box, and the cereal spilled on the floor. Appellant said to his aunt and cousin, "Do you see this shit?"

Appellant hit Ellis's back from behind as she was holding their daughter, causing her to stagger but not to fall. Appellant then backed Ellis into the corner. Appellant's cousin told appellant to let Ellis go, and then attempted to get the child from Ellis.

Appellant pushed Ellis's head several times with his finger or hand, and told her, "Now I have to fuck you up." At that point, Ellis was holding a bag containing two drinks: one in a glass bottle and the other in a plastic bottle. Ellis flung the bag at appellant. Ellis assumed that it hit him, because he grabbed his head.

Appellant then punched Ellis in the face, causing Ellis to drop their daughter onto the bed. After the first swing, appellant continued to punch Ellis in the face. Ellis lost two teeth, sustained a broken jaw, and suffered

black eyes. The State introduced photos of Ellis's injuries and presented medical testimony about her injuries.

Appellant eventually stopped punching Ellis. He left the residence and Ellis called 911. During the 911 call, Ellis screamed for about three minutes and then reported that appellant fought her because she poured out some cereal. Ellis also described her injuries.

Photos of appellant after the incident show him with a laceration above his left eyebrow.

The day after the incident, appellant sent a text message to Ellis in which he apologized.

Sergeant Martin interrogated appellant. During appellant's statement to the detective, appellant said in relevant part that: (1) Ellis threw cereal on the floor after he told her to leave; (2) they were initially yelling in each other's faces, but were not touching each other; (3) she then repeatedly hit him in his eye with a drink bottle until the bottle busted; (4) he "just retaliated" and hit her; and (5) he knocked out her teeth, but did not swing at her with the intent to knock out her teeth.

*The Defense's Case*

The defense presented the testimony of appellant, his grandmother, and his cousin. For purposes of this opinion, we will focus on appellant's testimony.

Briefly, appellant testified that, prior to Ellis hitting him with the bottle, he did not point his finger at her or punch her. Ellis hit appellant "at least twice" with the bottle, and the bottle broke. When Ellis hit appellant the second time with the bottle, appellant swung at her. Appellant swung "immediately after" Ellis hit him with the bottle. Ellis continued to hit appellant after striking him with the bottle. Appellant testified that he stopped swinging when Ellis stopped. He claimed that he was just trying to protect himself.

*Jury Instructions*

During a preliminary charge conference, the trial court stated that "the evidence suggests that [Ellis] could avail herself of the defense of self-defense," and that Ellis would seem to be "entitled" to a special jury instruction with respect to her right to use self-defense. The trial court asked whether the State wished to have a self-defense for the benefit of

Ellis, and the State responded in the affirmative. The trial court then replied: "I suggest that it should be done, and you need to prepare that, but be careful how you do that. I would suggest that you track the language of the Self-Defense Instruction . . . ."

Later, during the final charge conference, defense counsel objected to the proposed jury instruction concerning Ellis's right to use self-defense. He argued that the victim was not on trial and that such an instruction was not appropriate. The trial court ruled that the instruction was "entirely appropriate."

Thus, in addition to instructing the jury on appellant's right to use non-deadly force in self-defense, the trial court instructed the jury on the victim's right to use non-deadly force in self-defense.

Appellant did not request an instruction on the justifiable use of deadly force, and the trial court did not give such an instruction.

*Closing Argument*

In closing argument, the State argued that Ellis acted in self-defense when she hit appellant with the bottle, and pointed out that the jury would receive a jury instruction "on how Ms. Ellis was using self-defense." The State also argued that appellant did not act in self-defense because, among other things, the "threat was already over" when he started hitting Ellis.

*Verdict and Sentence*

The jury found appellant guilty of the lesser included offense of felony battery as to Count I, and found appellant not guilty as to Count II. The trial court sentenced appellant to three years in prison, followed by two years of probation. The trial court also ordered appellant to make restitution.

*Appellate Analysis*

On appeal, appellant argues that the trial court erred by instructing the jury on the alleged victim's right to use self-defense. Appellant contends that the instruction was misleading and improperly shifted the focus of the case from appellant's claim of self-defense to the right of the victim to hit appellant with a glass bottle. Appellant complains that the instruction was not only irrelevant, but it created a presumption of provocation.

A trial court's decision to give or withhold a jury instruction is reviewed

4

for an abuse of discretion. *Calkins v. State*, 170 So. 3d 888, 889 (Fla. 4th DCA 2015). However, the trial court's discretion on a jury instruction issue "is strictly limited by case law." *Newman v. State*, 976 So. 2d 76, 78 (Fla. 4th DCA 2008).

Florida courts have held that it is error for a trial court to modify the standard jury instructions and instruct the jury on the victim's right to use force. *See, e.g., Butler v. State*, 493 So. 2d 451 (Fla. 1986); *Mann v. State*, 135 So. 3d 450 (Fla. 5th DCA 2014).

In *Butler*, the seminal case on this issue, the Florida Supreme Court held that giving an instruction on the justifiable use of force in one's home was reversible error where the alleged crime of attempted murder occurred in the victim's home and where the victim denied attempting to use force. 493 So. 2d at 452–53. There, the trial court gave a modified version of the standard instruction on the justifiable use of force in one's home by changing the word "defendant" to "person." *Id.* at 452.

On appeal, the Florida Supreme Court found that the instruction (1) was unrelated to the evidence at trial, and (2) was extremely confusing and misleading. *Id.* The court reasoned: "The instruction improperly shifted the focus of the case from the applicability of the defense of self-defense to the right of the victim to fight force with force. As a result, the confusing and misleading instruction virtually negated the defendant's only defense, that of self-defense." *Id.* at 453.

Relying upon *Butler*, the Fifth District in *Mann* held that a modified jury instruction on the victim's right to use non-deadly force in defense of his property improperly shifted the focus of the case from the applicability of the defendant's claim of self-defense to the victim's right to use non-deadly force to protect his wife's cat. 135 So. 3d at 455. The court explained that "because [the victim] was not charged with any offense, *his* right to act in defense of his wife's cat is irrelevant." *Id.* The court further found that the instruction "improperly creates a presumption of provocation," and "might lead a reasonable jury to conclude that [the victim's] right to use non-deadly force precluded [the defendant's] right to use deadly force." *Id.* 456.

Several other post-*Butler* cases have reached similar conclusions. *See Hansen v. State*, 898 So. 2d 201 (Fla. 2d DCA 2005); *Desouza v. State*, 650 So. 2d 170 (Fla. 4th DCA 1995); *Mason v. State*, 584 So. 2d 165 (Fla. 1st DCA 1991). For example, in *Mason*, the First District explained that an instruction on the victim's right to use self-defense in the home "was misleading and confusing since it tended to shift the focus away from the

issue of whether the *defendant* was justified in the use of force, and to place emphasis on whether the *victim* was justified in defending himself—a question which was not at issue in this case." 584 So. 2d at 167.

Here, the modified jury instruction on Ellis's right to use non-deadly force was misleading and confusing, because it improperly shifted the focus of the case from appellant's claim of self-defense to the issue of Ellis's right to use force. Because Ellis was not charged with any offense, the question of whether Ellis was legally justified in using force against appellant was not at issue in this case.[1] Although we do not comment on the Fifth District's characterization of the instruction as creating a "presumption of provocation," *see Mann*, 135 So. 3d at 456, the instruction was, at a minimum, misleading and confusing.

*Conclusion*

Based on the foregoing, we hold that the trial court erred in instructing the jury on the victim's right to use force in self-defense. Moreover, given the disputed evidence in this case and the difficulty in determining how the improper instruction might have affected the jury's consideration of appellant's self-defense claim, we cannot conclude that this error was harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So. 2d 1129, 1138–39 (Fla. 1986). We therefore reverse appellant's conviction and sentence and remand for a new trial.

*Reversed and Remanded.*

FORST and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[1] The standard instruction on appellant's justifiable use of non-deadly force already instructed the jury on the law of self-defense as applied to an aggressor who initially provoked the use of force against himself, so a separate instruction as to Ellis's right to use self-defense was unnecessary and improperly shifted the focus of the case.

6